# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| **THE PILLSBURY COMPANY, a corporation,** | **Court File No. 03-6560 DSD/SRN** |
| **Plaintiff,** | |
| **vs.** | **AFFIDAVIT OF MARK J. FEINBERG** |
| **ZURICH AMERICAN INSURANCE COMPANY, a corporation,** | |
| **Defendant.** | |

STATE OF MINNESOTA   )
                            ) ss.
COUNTY OF HENNEPIN   )

Mark J. Feinberg, being first duly sworn upon oath, deposes and states as follows:

1.      That he is one of the attorneys representing plaintiff The Pillsbury Company in this matter.

2.      Attached as Exhibit A is a true and correct copy of plaintiff's proposed First Amended Complaint.

FURTHER YOUR AFFIANT SAYETH NOT.

November 11, 2004

 s/ Mark J. Feinberg          
Mark J. Feinberg

Subscribed and sworn to before me this
  11   day of November, 2004.

      s/ Patricia A. Metcalf          
Notary Public

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

THE PILLSBURY COMPANY, a corporation,

Plaintiff,

vs.

ZURICH AMERICAN INSURANCE
COMPANY, a corporation,

Defendant.

Court File No. 03-6560 DSD/SRN

**FIRST AMENDED COMPLAINT**

---

Plaintiff, The Pillsbury Company ("Pillsbury") for its First Amended Complaint states and alleges as follows:

## INTRODUCTION

1.     This is a Complaint for declaratory judgment pursuant to 28 U.S.C. § 2201 and for breach of contract. Plaintiff Pillsbury seeks a judgment that Defendant Zurich American Insurance Company ("Zurich") is bound to provide coverage under a Zurich insurance policy that was in force and effect at the time of Pillsbury's loss on or about June 8, 2001 and damages for breach of that insurance policy.

## PARTIES

2.     Pillsbury is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Golden Valley, Minnesota.

3.     Zurich American Insurance Company ("Zurich") is a corporation organized and existing under the laws of the State of New York with its principal place of business in Schaumburg, Illinois. Zurich is engaged in the business of insurance and is authorized to conduct business in the State of Minnesota.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that Pillsbury and Zurich are citizens of different states, and the matter in controversy exceeds $75,000 exclusive of costs and interest.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that Defendant transacts or has transacted business in the District of Minnesota and is subject to personal jurisdiction in the District of Minnesota.

## INSURANCE CONTRACT

6.     Zurich issued a policy of insurance to Grand Metropolitan, Inc., Policy No. PPR2894266 00 ("Zurich Policy") for the period July 1, 1998 to July 1, 1999. The policy was renewed by endorsement for the period of July 1, 1999 to July 1, 2000 and again for the period of July 1, 2000 to July 1, 2001.

7.     The policy identified the named insured as Grand Metropolitan, Inc. and its affiliated, subsidiary and associated companies. Pillsbury was a subsidiary of Grand Metropolitan and was therefore an insured under the Zurich policy during the relevant time period.

8.     The Zurich Policy provides Pillsbury with coverage for:

all risk of physical loss of or damage to property described herein, except as hereinafter excluded.

A true and correct copy of the Zurich Policy including the renewal endorsements is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

9.      Pillsbury has a plant in Martel, Ohio ("Martel plant") that produces food products for sale to customers and for other Pillsbury facilities, as well. One of the products that the Martel plant produces is a "pre-mix" for various products, which consists of salt, baking soda, and Sodium Acid Pyrophosphate ("SAPP").

10.     To facilitate meeting the high demand for pre-mix, Pillsbury dedicated a production line ("line six") at the Martel plant solely to the manufacture of pre-mix. To help achieve the pre-mix production goals, a special German-made Reimelt food processing machine ("Reimelt machine") was installed on line six in December 1999.

11.     The production of pre-mix in the Reimelt machine involved passing SAPP through a cylindrical sifting screen made out of a plastic material called Nytex.

12.     On or about June 8, 2001, a hole in one of the Nytex sifting screens was discovered by Martel plant employees during a routine inspection of line six. The Nytex screen was replaced, and random testing of recently produced pre-mix failed to disclose any Nytex in the pre-mix.

13.     On June 18, 2001, Pillsbury discovered pieces of the Nytex screen in biscuits on the production line at its Joplin, Missouri plant. The pre-mix for the biscuits had come from the Martel plant.

3

14.    On June 23, 2001, Pillsbury tested a number of bags from the lot of pre-mix made on line six and found pieces of the Nytex screen in several bags.  Pillsbury then shut down line six and began the process of collecting and destroying all of the lot of pre-mix that had been made on line six during the relevant time period.  In order to avoid the risk of distributing product containing Nytex screen to the public, Pillsbury destroyed all of the bags of product that were made on line six during the relevant time period as well as additional finished product that now contained portions of that lot of pre-mix.  The destroyed products included both some that had Nytex screen in them and some that were untested.  However, all were part of the lot that had been made on line six during the relevant time period.

15.    As a result of the loss at the Martel plant, Pillsbury sustained insured damages consisting of: (1) the cost of the product known to be damaged as well as the cost of the untested products that were shipped to customers; (2) the freight and administrative costs of returning the products to Pillsbury and destroying them; (3) the actual cost of damaged and untested products that remained on hand at Pillsbury's plants and the costs of destroying that product; (4) lost profits for damaged and untested product; and (5) other incremental costs related to the loss.

16.    Pillsbury promptly notified Zurich of the loss and on November 30, 2001, Pillsbury submitted a "Statement of Claim" to Zurich that estimated Pillsbury's losses at between $12 and $15 million.

17.    On May 17, 2002, Pillsbury submitted a Preliminary Claim Report to Zurich ("Claim Report") in which Pillsbury detailed and substantiated its claimed damages as a result of the loss in the amount of $12,298,191.

18.    On July 9, 2002, Zurich's claims adjuster, Desmond Sullivan of Crawford Technical Services, met with representatives of Pillsbury to discuss the Claim Report, including

how the information was compiled and how the conclusions in the Claim Report were reached. Shortly after that meeting, Sullivan made a request of Pillsbury for additional information and documentation. By November 15, 2002, Pillsbury had responded to all of Sullivan's requests.

19.     More than three months later (on February 25, 2003) Zurich made another request that Pillsbury provide additional documents. By June 23, 2003, Pillsbury had responded to all of these additional requests.

20.     Despite the fact that Pillsbury has responded to all of Zurich's requests for information and documents and despite Pillsbury's repeated requests for a response from Zurich regarding its determination of coverage under the Zurich Policy:

a.      Zurich has failed to notify Pillsbury of the reasons why its investigation of Pillsbury's claim has not been completed or the expected date that its investigation will be complete, in violation of Minn. Stat. 72A.201, subd. 4(3).

b.      Zurich has failed to advise Pillsbury of its acceptance or denial of Pillsbury's claim, in violation of Minn. Stat. 72A.201, subd. 4(11).

## COUNT ONE: DECLARATORY JUDGEMENT

21.     Pillsbury incorporates the allegations contained in Paragraphs 1-20 as if set forth in full.

22.     An actual controversy exists between the parties since Zurich will not respond with any coverage determination concerning the loss.

23.     The Zurich Policy provides in Clause 8, entitled "PERILS INSURED AGAINST," that it:

insures against all risk of physical loss of or damage to property described herein, except as hereinafter excluded.

24.     The Zurich Policy provides in Clause 31, entitled "CONSEQUENTIAL LOSS," that it "insures against"

b. the reduction in value to the remaining part or parts of any lot of merchandise or other insured property usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a peril insured against.

25. Under the Zurich Policy, the damage to the products that contained Nytex screen, the ensuing destruction of the untested products and the additional costs that Pillsbury incurred in responding to the Nytex screen incident were risks of physical loss or damage and/or consequential losses that were not subject to any applicable exclusion.

26. Pillsbury has satisfied all conditions precedent to payment under the Policy and has otherwise complied with all of the applicable terms and conditions of the Policy, including but not limited to: providing Zurich with prompt notice of the loss, providing Zurich with a timely comprehensive Claim Report detailing the facts leading up to the loss and the amount of loss incurred, and providing Zurich with all requested information and documentation concerning the claim.

27. Pillsbury is entitled to a declaration that coverage exists under the Zurich Policy for the loss and damage it sustained as a result of the Nytex screen incident.

## COUNT TWO: BREACH OF CONTRACT

28. Pillsbury incorporates the allegations contained in Paragraphs 1-26 as if set forth in full.

29. Despite the fact that coverage exists under the Zurich Policy and despite Pillsbury's compliance with all conditions precedent and other terms and conditions of the Zurich Policy, Zurich has refused to indemnify Pillsbury for the losses incurred in the amount of $12,298,191, in breach of the insurance contract it issued to Pillsbury.

30. Pillsbury is entitled to $12,298,191 in damages for breach of the insurance contract issued by Zurich to Pillsbury.

6

**WHEREFORE**, Pillsbury respectfully requests that this Court enter an Order:

(1)     Declaring that coverage exists under the Zurich Policy for the loss and resulting damages;

(2)     Declaring that Zurich has violated the provisions of Minn. Stat. 72 A.201, subd. 4(3) and 4(11).

(3)     Awarding Pillsbury the amount of $12,298,191;

(4)     Awarding Pillsbury both pre-judgment and post judgment interest;

(5)     Awarding Pillsbury its attorney's fees and costs incurred in this matter; and,

(6)     Awarding Pillsbury such further relief as the Court deems just and equitable.


November 11, 2004                           **ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP**


                                            ___s/ Mark J. Feinberg_____
                                            Lawrence Zelle (119878)
                                            Mark J. Feinberg (28654)
                                            Chad Snyder (288275)
                                            500 Washington Avenue South
                                            Suite 4000
                                            Minneapolis, Minnesota 55415
                                            (612) 339-2020

                                            **ATTORNEYS FOR PLAINTIFF
                                            THE PILLSBURY COMPANY**


**THE PILLSBURY COMPANY DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

287917v1