# HANSON LULIC & KRALL, LLC
ATTORNEYS AT LAW

700 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Office: 612.333.2530
Fax: 612.392.3675

*VIA E-FILE*

April 22, 2005

**Timothy S. Poeschl**
*Attorney at Law*
Direct Dial: 612.392.3645
E-Mail: tpoeschl@hlk.com

United States District Court
Warren E. Burger Federal Building
316 North Robert Street - Room 242
St. Paul, MN 55101

Re:   The Pillsbury Company v. Zurich American Insurance Company
      Court File No.:   03-6560 DSD/SRN
      Our File No.:     ZUR 18991

Dear Court Administrator:

Enclosed for filing please find Defendant Zurich American Insurance Company's expert disclosure of J.A. Stoops, CPCU regarding the above-entitled matter.

If you have any questions, please do not hesitate to contact me at the number listed above.

Sincerely,

Timothy S. Poeschl

TSP/bam
Enclosure

cc:   Pat St. Peter, Esq.

G:\HLK\18991\Atty\Court.005.doc



**GAB Robins**
GAB Robins North America, Inc.

3601 Minnesota Drive, #650
Bloomington MN 55435
T: 952-897-3839
F: 952-897-1070
Email: stoopsj@gabrobins.com

April 19, 2005

Ms. Kelly Jorgensen & Mr. James M. Hoey, Esq.
Clausen Miller
10 S LaSalle Street
Chicago IL 60603-1098

Mr. Timothy Poeschl & Mr. Joe Lulic, Esq.
Hanson, Lulic & Krall
700 Northstar E
608 2nd Ave S
Minneapolis MN 55402

**RE: EXPERT'S ANALYSIS REPORT –
MINNESOTA FAIR CLAIMS PRACTICES ACT
PILLSBURY COMPANY VS ZURICH INSURANCE CO.
INSURER CLAIM NO: 510-0020793
GAB ROBINS FILE: 56527-66470
PRODUCT CONTAMINATION & RECALL
LOCATION OF LOSS – OHIO AND MISSOURI
DATE OF LOSS: ON/OR ABOUT 6-18-01**

Gentlemen:

The following is my analysis of this claim in relation to the Minnesota Fair Claims Practices Act. This is in response to the fact that reference to violation of the Minnesota Fair Claims Practices Act has been included in the suit by plaintiff, Pillsbury.

Attached to this report you will find my current CV. I also have attached a separate listing of files in which I have been called upon for depositions or court testimony between April 15th, 2001 and April 15th, 2005, which covers the past 4 years. I have noted my hourly billing rate as well.

My report is predicated upon review of the Minnesota Fair Claims Practices Act, as it currently stands. My review is also based on the lawsuit pending between Pillsbury and Zurich. I have reviewed the insurer's file as provided. I also have reviewed the plaintiff's expert's report of plaintiff's expert, John D. Moyer.

Many states have fair claims practices acts. Minnesota enacted a fair claims practices act well before the date of loss. In Minnesota, it is intended to be an administrative tool to be used by the Department of Commerce – Insurance Department for the department's enforcement of proper business practices by insurers engaged in providing and servicing insurance products in the State of Minnesota. It is not exclusively for property insurance. It provides guidelines for a variety of claims, including property claims, and gives the insurance commission the right to investigate and take action, including fines and suspensions against insurers that their investigation reveals are not in compliance with the fair claims practices act.

Form CR0167 (Rev. 12/97)

APR-22-2005 FRI 03:34 PM GAB ROBINS NA    FAX NO. 9528970037    P. 03
CASE 0:03-cv-06560-DSD-JJG   Doc. 54   Filed 04/22/05   Page 3 of 8

-2-

The Minnesota Fair Claims Practices Act as amended allows the insurance commissioner and their investigators to pursue and take administrative action against an insurer for as little as one violation on one file. In practice, this is simply not the way it is undertaken and enforced regarding property claims in Minnesota. The insurance commissioner's office and its investigators are looking for repeated trends and patterns by an individual insurer that suggests they are not properly handling claims in a matter that in general complies with the fair claims practices act. In this particular matter, it would be regarding property claims adjustment practices. On the occasion where the insurance commissioner finds a pattern of activity that does not comply with the guidelines within the Act, they will provide a warning and/or fine to the insurer involved.

While they can pursue an insurer for an individual case, my understanding is they very seldom if ever would do this, other than to investigate a consumer complaint to get the case/file "back on track". Their big enforcement tool is fines and they are very seldom if ever applied for a single violation but instead are applied for a series of violations of one or more sections of the Act.

The Minnesota Fair Claims Practices Act is primarily designed and implemented to meet consumer claims on homeowners and related type property losses as opposed to commercial claims. The vast majority of their investigations and actions involve pattern violations, as discussed above, on consumer homeowners claims as relates to the property claim area. Seldom if ever do they become involved when you have the circumstances as we have here where there is a large, complicated and complex commercial claim involving a Fortune 500 Company that has retained internal and external legal assistance.

While I am not an attorney, I am sure that you and the plaintiff are aware of the fact that the Minnesota Fair Claims Practices Act and any possible violations of it are not grounds for legal action by a private plaintiff against an insurer. There has been numerous administrative and cases where the fact there is no private cause of action arising out of the Minnesota Fair Claims Practices Act has been affirmed. Also Minnesota is not a bad faith or punitive damages state.

The Minnesota Fair Claims Practices Act is covered under 72A.20 and its various sub-divisions. It is a guideline. Words such as general, reasonably and other general terms show up within the act, as do many references to repeat activities versus isolated incidents. It is in essence a general practice outline that provides a guide for the insurance commissioner and the insurers in claims handling but is not necessarily etched in stone, does not normally apply to large and complex files and is an administrative tool, rather than a private cause of action.

Pertaining directly to this claim, it should be pointed out that the loss occurred in Ohio and then Missouri. The company that owned Pillsbury at the time of loss also was not domiciled in Minnesota. Also Pillsbury may not be incorporated in the State of Minnesota either. Normally the Minnesota Fair Claims Practices Act is going to apply to claims in Minnesota. Here is a claim that occurred in Ohio and Missouri and the insured simply had business offices in Minnesota. Thus I would question whether the insurance commissioner would ever take any individual enforcement action of whether there would be any violation of the Minnesota Fair Claims Practices Act because the loss simply didn't happen here.

Also it appears when this matter was placed in suit, a copy of the suit was formally served on the insurance commissioner for the State of Minnesota. To my knowledge, he did not open up an investigative file nor take any other action to investigate this matter and/or fine Zurich Insurance Company. This seems to further confirm that this file is not one that would deem investigation or penalty under the Minnesota Fair Claims Practices Act.

Form 139 (Rev. 8/97)

-3-

There are what is referred to as standards. These are not laws and are not causes of private action. It is obvious that Zurich, its independent adjuster and expert did not perfectly comply with these standards during the course of the adjustment of the claim. However when you take this claim and examine the follow-up and response time by both parties, you would observe, if you made a time line, that Pillsbury took as long, if not longer to respond to requests than Zurich did. The standards in the fair claims practices act was designed for simple redundant homeowners type of claims rather than a multi million dollar multi state convoluted product contamination and recall claim involving a Fortune 500 insured with internal and external legal assistance.

When you look at the standards for fair claims settlement offers and agreements they state that there is a "violation" when an insurer refuses to pay when there is no good faith dispute. There also is a "violation" when the insurer fails to pay an agreed claim in 5 days. As we are all aware, there certainly has been a good faith dispute in this file and less then 10% of the claim presented has been agreed upon.

Section 72A.201 is in reference to the regulation of claims practices. For a violation, the insurance commissioner is going to look at all the facts and circumstances, the magnitude of harm and the actions of the insured as well as the insurer. In this case the competency of the parties, competency of their representatives and the timeliness of claim activity appears equal.

Returning to review of Expert Moyer's report, I observe that he has been an "inside" claims supervisor for the past 30 years covering claims nationwide. I am unsure the extent of his experience with the Minnesota Fair Claims Practices Act since it was enacted. He references the model UFCSPA and then adds the Minnesota Fair Claims Practices Act to the model. The model is simply a guideline and of course does not specifically apply in Minnesota or any other state.

The plaintiff's expert apparently pulled up a "Claims Service Contract" that Zurich offered at one time. This apparently was pulled off the internet. I have reviewed it and also discussed it with Zurich. The Claims Service Contract was used for a few years as a "warranty agreement" in special circumstances for certain Zurich customers only. It was not offered to all Zurich insureds, only a select few. It was used as an inducement and marketing tool by underwriting at Zurich in order to "close the deal" on bringing in insureds that were going to have repetitive claims in volume that were going to need to be handled by dedicated adjusters. Many of these were handled by inside adjusters that were dedicated to the given insured and program. The penalties for non-compliance were capped at $5,000.00. Because only a few customers received the warranty program and because of the type of claims they had, the Zurich people that I spoke to did not recall a warranty penalty ever being demanded by an insured under the warranty program..

Zurich did not extend this sort of warranty inducement to Pillsbury. It would be nearly impossible to comply with the warranty requirements on the multitude of far reaching and/or complex claims that an insured like Pillsbury might have.

Pillsbury's expert goes on to hone in on some of the time sensitive guidelines within the Minnesota Fair Claims Practices Act. I have addressed above the reasons why the insurance commission of the State of Minnesota and his investigators would not and did not pursue a violation action against Zurich when this type of file is involved. Thus if they do not feel it is appropriate to even open up a file, why should this be considered as a count in this lawsuit?

Plaintiff Expert Moyer concludes that there has been a reckless disregard for the policyholder by Zurich. On the other hand it can be easily argued that Zurich has an obligation to all owners and policyholders to properly investigate, adjust and pay all claims. I believe the paid claim to date regarding this matter is less than $750,000.00 versus a claim in excess of $12,000,000.00 that is currently the subject of the suit.

Form 139 (Rev. 8/97)

-4-

In summation, I question whether the Minnesota Fair Claims Practices Act would even apply regarding this claim. Certainly the insurance commissioner of the State of Minnesota must have thought the same way when he received a copy of the lawsuit in which there was a violation count of the Minnesota Fair Claims Practices Act contained within the lawsuit and apparently elected not to even open an investigative file much less an administrative hearing or fine against Zurich.

If you would stringently apply all aspects of the Minnesota Fair Claims Practices Act versus all property files received by all insurers for any given extended time period, you are probably going to find few if any files that would fully comply with every aspect of the fair claims practices act in Minnesota. That is especially the case when large and complex files that are open for an extended period of time are involved. The insurance department is very much aware of this. They have used the act as an enforcement tool for patterned activity versus an individual file of this nature.

In over 10 years of working six, seven and eight figure files involving property claims that have occurred in Minnesota, I have had an occasional complaint to the insurance commissioner during the course of the adjustment of the claim. Because, as stated above, large and complex files that are open for an extended period of time are not "perfect" versus the Minnesota Fair Claims Practices Act, oftentimes an insured or their attorney may try to file a complaint as a leverage tool in the adjustment. In every instance I was not in compliance with the letter of the act regarding all the requirements that are contained as guidelines within the act. However not once was any enforcement action taken against me or the insurer I worked for. Thus on those files, as is the case with this file, all the guidelines and aspects of the act were not complied with but that in and of itself did not result in a violation of the Minnesota Fair Claims Practices Act because, even though the insurance commissioner was very much aware of the file, no investigation was undertaken or action taken against Zurich.

Regards,

*[signature]*

J. A. Stoops, CPCU
National General Adjuster
(952) 897-9336

JAS:lb

Form 139 (Rev. 8/97)

## BIOGRAPHY FOR JAMES A STOOPS
## NATIONAL GENERAL ADJUSTER
## GAB ROBINS
## MINNEAPOLIS MN BASED

Education:

BBA – University of Wisconsin – Madison in Finance & Investment Banking
GAB Robins continuing education schools including the complete General Adjuster Program
Received Chartered Property Casualty Underwriter designation in 1989

Work Experience:

Began career as a Property and Casualty Adjuster in Fond Du Lac WI in 1978.
Promoted to Property Adjuster in the Minneapolis MN Branch in 1980.
Received General Adjuster designation in 1986.
Received Regional General Adjuster designation in 1995.
Received National General Adjuster designation in 2000.
Currently I work multi-million dollar first party property claims either as the account adjuster or at the insurer's request throughout the United States.
Experience includes losses involving buildings, contents, inventory, equipment, loss of income and extra expense either as the first party adjuster or the damages expert on property damage liability claims.
I have considerable experience in Inland Marine claims adjustment including contractor's equipment, builder's risk and cargo.
Over the past 10 years I have been called upon to act as an appraiser or umpire in over 100 appraisals where I was not the adjuster.

Presenter Experience:

Numerous GAB Robins internal seminars and training sessions at various locations throughout the United States.
Presented at the PLRB National and Regional Conventions 2000 thru 2005 on a variety of property insurance adjustment topics.
Past CPCU All Industry Day Workshop Panelist in 1998 and 2002.

Work Related Organizations/Activities:

Past Minnesota Chapter of CPCU Board Member.
Past President of the Northwest Loss Association Property Claims Organization.

Contact Information:

GAB Robins North America, Inc.
3601 Minnesota Drive, #650
Bloomington MN 55435
Direct Dial Phone: 952-897-9336
Fax: 952-897-1070
Email address: stoopsj@gabrobins.com

Reference:

Available upon request.

James A. Stoops
Trial Testimony, Depositions and Compensation
April 15, 2001 thru April 15, 2005

Deposition –   R.D. Offutt Company vs Lexington Insurance Company.
             March 23, 2005.
             As adjuster handling file for insurer.

Trial –      Highland Courts vs BEI.
             February 15, 2005.
             As expert on ice dam claims.

Deposition – Specialty Engineering and EMC vs Minnesota Conway and
             Lexington Insurance Company.
             November 20, 2003.
             As expert on the property damages.

Deposition – Jimmy's Lemon Tree vs Allstate Commercial Insurance Company.
             March 13, 2003.
             As adjuster handling file for insurer.

Compensation – My hourly rate is $125.00 an hour.

# CERTIFICATE OF SERVICE

I hereby certify that on <u>April 22, 2005</u>, I electronically filed the foregoing *Defendant Zurich American Insurance Company's expert disclosure of J.A. Stoops, CPCU* with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Pat St. Peter, Esq.
    Zelle, Hofmann, Voelbel, Mason & Gette
    Suite 4000
    500 Washington Avenue South
    Minneapolis, MN 55415

Dated: <u>April 22, 2005</u>

                                                  /s/ Beth A. Meyer
                                                  Beth A. Meyer

G:\HLK\18991\PLDGS\CERTSVC.DOC