# EXHIBIT B



Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, NY 10036-2774
212 345 5000 Fax 212 345 4808

May 2, 2005

VIA FEDERAL EXPRESS

Kelly A. Jorgensen
Clausen Miller PC
10 S. LaSalle Street
Chicago, IL 60603

Re:     _Subpoena served in the matter_ Pillsbury Company v. Zurich American Insurance, et al.

Dear Ms. Jorgenson:

I write in response to your subpoena served on Marsh & McLennan Companies, Inc., ("Marsh") in connection with the above-referenced matter.

Please have the receipt of the enclosed, responsive documents deem Marsh compliant with said subpoena.

Very truly yours,

Alec Setten
Legal Assistant

Marsh • Putnam • Mercer
Marsh & McLennan Companies

MMC 00001

# Endorsement 8



**ZURICH**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 02 | 07/01/2000 | 07/01/2001 | 07/01/2000 | 50452000 | $1,989,380 | None |

**Named Insured: DIAGEO, INC.**

**Address (including ZIP Code): 200 S. 6TH STREET**
**MINNEAPOLIS, MN 55402**

> ### This endorsement modifies insurance provided by the following:
>
> ### Coverage Change Endorsement

The following endorsement is deleted:

Endorsement #7 – Pillsbury Entity Deletion Endorsement

All locations and entities associated with Pillsbury are covered from July 1, 2000 to July 1, 2001.

All other terms and conditions remain unchanged.

MMC 00002

Countersigned _____

Authorized Representative

U-GU-470-A CW (5/98)

# Renewal Certificate Declarations

**Ⓩ ZURICH**

### Zurich American Insurance Company (ZAIC)

Certificate No.  PPR2894266-02          Renewal of   PPR 2894226 01

Named Insured and Mailing Address
   DIAGEO, INC.
   200 S. 6TH STREET
   MINNEAPOLIS, MN 55402

Producer and Mailing Address
   MARSH USA INC.
   1166 AVE OF THE AMERICAS    38TH FLOOR
   NEW YORK, NY  100362774

Policy Period:
Coverage begins 07/01/2000 at 12:01 AM; Coverage ends 07/01/2001 12:01 AM at the Insured's address shown above

**This policy is renewed for the ONE YEAR period shown above. Insurance provided during this renewal period is subject to all the Limits of Insurance and provisions of coverage applying during the preceding period unless a change is shown below.**

Policy forms revised during the preceding period are replaced by the substitute forms listed below:
New forms effective on the renewal date are listed below:

| | |
|---|---|
| U-GU-470-A CW (5/98) | Schedule of Taxes/Surcharges – Endorsement No. 3 |
| U-GU-470-A CW (5/98) | Boiler and Machinery Amendatory Endorsement – Endorsement No. 4 |
| U-GU-470-A CW (5/98) | Seepage/Pollution/Contamination Exclusion Endorsement – Endorsement No. 5 |
| U-GU-470-A CW (5/98) | Joint Venture Named Insured Endorsement – Endorsement No. 6 |
| U-GU-470-A CW (5/98) | Pillsbury Entity Deletion Endorsement – Endorsement No. 7 |

**Changes in Covered Property or Limits of Insurance effective on the renewal date are shown below:**

The Limits of Liability and other limits of $116,424,000 as shown on the Manuscript Form 1998 are amended to: $105,973,000.

The Limits of Liability and other limits of $83,160,000 as shown on the Manuscript Form 1998 are amended to: $75,695,000.

The Limit in section 7.Coverage,e.(1) Royalties is amended to $15,139,000.

As respects the peril of seepage and/or contamination all losses, damages, or expenses arising out of any one Occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $7,569,500.

All other terms and conditions remain the same.

---

THIS POLICY IS RENEWED AT THE RATES IN EFFECT ON THE DATE OF RENEWAL

Premium

| | | |
|---|---|---|
| Advance or Deposit Premium | $ | 3,287,149 |
| Other Premium | $ | None |
| Total Premium | $ | 3,287,149 |

Premiums due with reports or resulting from audits are not included in the above premiums.
Audit Period    Not auditable

MMC 00003

Countersigned at_____          By _____
Countersignature Date_____          Authorized Agent

U-IM-D-3875-B (8/89) .

# Endorsement 3

**ZURICH**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 02 | 07/01/2000 | 07/01/2001 | 07/01/2000 | 50452000 | None | None |

**Named Insured:** DIAGEO, INC.

**Address (including ZIP Code):** 200 S. 6TH STREET
MINNEAPOLIS, MN 55402

### This endorsement modifies insurance provided by the following:

### Schedule of Tax / Surcharge

| | |
|---|---|
| Surcharge FL | $116.93 |
| Surcharge KY | $2,432.71 |
| Surcharge NY | $188.59 |
| Surcharge WV | $13.70 |
| Surcharge MN | $1,660.00 |
| Surcharge NJ | $658.48 |

MMC 00004

# Endorsement 4

**ZURICH**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 02 | 07/01/2000 | 07/01/2001 | 07/01/2000 | 50452000 | None | None |

**Named Insured: DIAGEO, INC.**

**Address (including ZIP Code): 200 S. 6TH STREET
MINNEAPOLIS, MN 55402**

This endorsement modifies insurance provided by the following:

**Boiler and Machinery Amendatory Endorsement**

IT IS HEREBY NOTED AND AGREED THAT WITH EFFECT FROM 1 JULY 1998 THE FOLLOWING AMENDMENTS ARE MADE TO THE CLAUSES OF POLICY:

CLAUSE 4. <u>DEDUCTIBLE</u>
The following deductibles are added to the policy:

a    (3)  Boiler and Machinery coverage

    i. US$50,000 each and every loss in respect of Gilbey's locations.
    ii. US$50,000 each and every loss in respect of the following    locations.

> 2403 S. Pennsylvania, Wellston, OH
> 1 Amboy Avenue, Woodbridge, NJ
> 4401 Paris Gravel Road, Hannibal, MO
> 151 Commonwealth Avenue, Menlo Park, CA
> 2500 Enterprise Avenue, Allen Park, MI
> 970 Continental Avenue, Tulare, CA
> 1 McGlynn Drive, Chanhassen, MN
> 3400 Texoma Drive, Denison, TX
> 3301 Grantline Road, New Albany, IN
> 1200 Main Street, Anthony, TX
> 500 Elmer Road, Vineland, NJ

CLAUSE 8. <u>PERILS INSURED AGAINST</u>

Perils Insured shall include physical loss or damage to Boiler and Machinery belonging to or under the control of the Insured caused by:-

    (1.) The sudden and unforeseen breaking distortion cracking fracturing failure of welds and nipple leakage thereof which necessitates its immediate repair or replacement to enable ordinary working to be continued.

    (2.) Steam pressure explosion thereof including resultant damage to surrounding property insured by this Policy.

MMC 00005

Special Provision

In respect of any Boiler and Machinery belonging to or under the control of the Insured which requires to be examined to comply with Statutory Regulations coverage is subject to the provision that such Boiler and Machinery shall be the subject of a policy or other contract providing the required inspection service.

Boiler and Machinery means;

Boiler – Those parts of the permanent structure (including fittings and direct attachments) subject to steam or other fluid pressure

Machinery – All installed machinery and plant owned by or leased to the Insured for the purpose of the business

CLAUSE 9. <u>PERILS EXCLUDED</u>

Sub – clause c, d and e are hereby deleted

Subject otherwise to the terms conditions and exceptions of the policy

1.

Countersigned _____

<span style="padding-left:2em"><u>**Authorized Representative**</u></span>

U-GU-470-A CW (5/98)

£

MMC 00006

# Endorsement 5



## ZURICH

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 02 | 07/01/2000 | 07/01/2001 | 07/01/2000 | 50452000 | None | None |

**Named Insured: DIAGEO, INC.**

**Address (including ZIP Code): 200 S. 6TH STREET**
**MINNEAPOLIS, MN 55402**

---

**This endorsement modifies insurance provided by the following:**

**Seepage/Pollution/Contamination Exclusion Endorsement**

---

IT IS HEREBY NOTED AND AGREED THAT WITH EFFECT FROM 1 JULY 1998 THE FOLLOWING AMENDMENT IS MADE TO THE POLICY:

CLAUSE 9 – PERILS EXCLUDED

sub-clause 1 is deleted and replaced by:

1.   Seepage and/or Pollution and/or Contamination Exclusion

Against loss, damage, costs or expenses in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever.

Nevertheless this Policy is extended to include seepage and/or pollution and/or contamination, direct or indirect, arising from

(1) a Defined Peril
(2) other sudden unexpected accidental loss destruction or damage;
(3) the accidental use of contaminated raw materials;
(4) any of the perils or events referred to in a) and b) above which results from seepage and/or pollution and/or contamination.

Further in the event of any product being contaminated (other than contamination which is caused maliciously with the intent to make a threat or demand) and not excepted under the terms of this Policy the amount payable hereunder shall be:

(a) As per the Valuation Clause other than in respect of product no longer belonging to the Insured where the basis of settlement shall be the cost of replacing the said contaminated product,
(b) The cost of withdrawal of the said contaminated product and any other product associated therewith including the cost of inspection destruction or disposal where necessary.

Provided that:

1) the Liability of this Company in respect of all seepage and/or pollution and/or contamination other than by a Defined Peril is limited to $76,695,000 any one loss or series of losses resulting from any one incident.
2) The liability of this Company in respect of the cost of withdrawal is limited to $15,139,000 any one loss or series of losses resulting from any one incident.
3) The Insured shall give notice to this Company of intent to claim no later than 12 months after the date of the original physical loss or damage.

MMC 00007

4) A deductible of $151,390 any one‾‾‾‾ ‾eries of losses resulting from any one inc‾ ‾ ‾pplies to the cost of withdrawal coverage.

Defined Peril shall mean fire, lightning, explosion, aircraft or other aerial devices or articles dropped therefrom, riot civil commotion, strikers, locked out workers, persons taking part in labour disturbances, malicious persons other than thieves, earthquake, storm, flood. Bursting or overflowing discharging or leakage of water tanks, apparatus or pipes, sprinkler leakage or impact by any road vehicle or animal.

**Counntersigned**

**Authorized Representative**

U-GU-470-A CW (5/98)

3

# Endorsement 6

**Z**
# ZURICH

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 02 | 07/01/2000 | 07/01/2001 | 07/01/2000 | 50452000 | None | None |

**Named Insured: DIAGEO, INC.**

**Address (including ZIP Code): 200 S. 6TH STREET
MINNEAPOLIS, MN 55402**

---

**This endorsement modifies insurance provided by the following:**

**Joint Venture Named Insured Endorsement**

---

IT IS HEREBY NOTED AND AGREED THAT WITH EFFECT FROM 1 JULY 1998 THE FOLLOWING AMENDMENTS ARE MADE TO THE NAMED INSURED UNDER THIS POLICY:

1) The Named Insured is hereby extended to include Schieffelin & Somerset. Provided that the Company will not provide an indemnity under this Policy to Moet Hennessy or its subsidiary companies in respect of its (their) participation in Schieffelin and Somerset a joint venture with the Named Insured

2) The Named Insured is hereby amended so that coverage in respect of any Joint Venture is provided only if the Named Insured has sole responsibility for the Joint Venture or is obligated to provide insurance for the Joint Venture (but excluding indemnity to the other partner in the Joint Venture unless specifically agreed by the Company)

IT IS HEREBY NOTED AND AGREED THAT WITH EFFECT FROM 8 OCTOBER 1999 THE FOLLOWING AMENDMENTS ARE MADE TO THE NAMED INSURED UNDER THIS POLICY:

The Named Insured is hereby extended to include The Pillsbury Company's interest in Ice Cream Partners Inc, a joint venture company with Nestle Inc provided that the Company will not provide an indemnity under this Policy to Ice Cream Partners Inc or Nestle Inc or its subsidiary companies in respect of its (their) participation in Ice cream Partner Inc. Furthermore the Company will not waiver subrogation rights provided under this Policy against Ice Cream Partners Inc or Nestle Inc or its subsidiary companies.

---

Countersigned

_____
**Authorized Representative**
£

U-GU-470-A CW (5/98)

MMC 00009

# Endorsement 7



# ZURICH

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 02 | 07/01/2000 | 07/01/2001 | 07/01/2000 | 50452000 | None | None |

Named Insured: DIAGEO, INC.

Address (including ZIP Code): 200 S. 6TH STREET
MINNEAPOLIS, MN 55402

---

**This endorsement modifies insurance provided by the following:**

**Pillsbury Entity Deletion Endorsement**

---

All locations and entities associated with Pillsbury are deleted effective January 1, 2001.

The premium shown on the Renewal Certificate Declarations reflects the short term premium charge for this entity.

All other terms and conditions remain unchanged.

Countersigned _____

_____
**Authorized Representative**
ϵ

U-GU-470-A CW (5/98)

MMC 00010

# Renewal Certificate Declarations



**ZURICH**

**Zurich American Insurance Company (ZAIC)**

Certificate No.   PPR2894266-01          Renewal of   PPR 2894226 00

| Named Insured and Mailing Address | Producer and Mailing Address |
|---|---|
| DIAGEO, INC. | MARSH USA INC. |
| 200 SOUTH 6TH STREET | 1166 AVE OF THE AMERICAS    38TH FLOOR |
| MINNEAPOLIS, MN 55402 | NEW YORK, NY  100362774 |

Policy Period:   Coverage begins  07/01/1999  at 12:01 AM;  Coverage ends  07/01/2000  GMT at the Insured's address shown above

This policy is renewed for the **ONE YEAR** period shown above.  Insurance provided during this renewal period is subject to all the Limits of Insurance and provisions of coverage applying during the preceding period unless a change is shown below.

Policy forms revised during the preceding period are replaced by the substitute forms listed below:

New forms effective on the renewal date are listed below:

U-GU-470-A CW (5/98)          Electronic Data Exclusion Clause – Endorsement No. 2
U-GU-470-A CW (5/98)          Schedule of Taxes/Surcharges – Endorsement No. 3

Changes in Covered Property or Limits of Insurance effective on the renewal date are shown below:

The Limits of Liability and other limits of $116,424,000 as shown on the Manuscript Form 1998 are amended to: $110,362,000.

The Limits of Liability and other limits of $83,160,000 as shown on the Manuscript Form 1998 are amended to: $78,830,000.

The Limit in section 7.Coverage,e.(1) Royalties is amended to $15,766,000.

All other terms and conditions remain the same.

### THIS POLICY IS RENEWED AT THE RATES IN EFFECT ON THE DATE OF RENEWAL

Premium
| | | |
|---|---|---|
| Advance or Deposit Premium | $ | 4,504,912 |
| Other Premium | $ | None |
| Total Premium | $ | 4,504,912 |

Premiums due with reports or resulting from audits are not included in the above premiums.
Audit Period     Not auditable

COPY

Countersigned at _____          By _____
Countersignature Date _____   ε          Authorized Agent

MMC 00011                                             D-3875-B (8/89)

# Endorsement    2

**ZURICH**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 01 | 07/01/1999 | 07/01/2000 | 07/01/1999 | 50452000 | None | None |

**Named Insured:**            DIAGEO, INC.

**Address (including ZIP Code):**    200 SOUTH 6TH STREET
MINNEAPOLIS, MN 55402¹

---

### This endorsement modifies insurance provided by the following:

### ELECTRONIC DATE EXCLUSION CLAUSE

---

This Policy is hereby amended as follows:

A.     We will not pay for any loss, damage, cost, expense, time element loss, or consequential loss, whether preventative, remedial, or otherwise, directly or indirectly caused by, consisting of, or arising from the anticipated, possible, potential, actual, or alleged failure, malfunction, deficiency, fault, inadequacy, problem, or reduced usefulness of any computer, communication system, computer system, hardware, data processing equipment, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment or non-computer equipment, or any program, computer software or operating systems, whether the property of the insured or others, occurring before, during or after the year 2000, relating to or resulting from any date-related function, operation or data including, but not limited to, any function, operation or data related to the year 2000 and beyond.

B.     We will not pay for the repair, replacement, change, alteration, correction, modification, enhancement, or upgrade to any communication system, computer, computer system, hardware, data processing equipment or microchip, or any microprocessor (computer chip), integrated circuit or similar device in computer equipment or non-computer equipment, or any program, computer software or operating system involving any loss, damage, cost or expense described in paragraph A. above.

C.     We will not pay for any loss, damage, cost, expense, time element loss, or consequential loss arising from any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, supervision, or any other service provided or performed, or not provided or performed, at any time, to test for, determine, evaluate, rectify, verify or check for any anticipated, possible, potential, actual, or alleged failure, malfunction, deficiency, fault, inadequacy, problem, or reduced usefulness described in paragraph A. above.

D.     We will not pay for any expenses under the sue and labor provision arising out of, related to, or in connection with loss, damage, cost, expense, time element loss or consequential loss described in paragraphs A., B., or C. above.

COPY

MMC 00012    U-GU-470-A CW (5/98)

## ELECTRONIC DATE EXCLUSION CLAUSE (CONTINUED)

E.     Such loss, damage, cost or expense described in paragraphs A., B., C., or D. is not considered direct physical loss or damage under this policy.

F.     Such loss, damage, cost, expense, time element loss, or consequential loss described in paragraphs A., B., C., D. above, is excluded regardless of any other cause or event that contributed concurrently or in any other sequence to the loss, damage, cost or expense.

G.     If direct physical loss or damage from a covered cause of loss results, then, subject to all its terms and conditions, this Policy shall be liable only for such loss or damage and any related time element loss. Notwithstanding anything else in this paragraph G., this policy shall not be liable for any loss, damage, cost, expense, time element loss, or consequential loss, whether preventative, remedial or otherwise, arising out of or relating to any repair, replacement, change, alteration, correction, modification, enhancement or upgrade relating to the ability of any computer, computer system, hardware, data processing equipment, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment or non-computer equipment, or any program, computer software, operating system or communication system to recognize, capture, save, retain, manipulate, interpret, calculate, compare, differentiate, sequence or process any data including one or more dates, including the Year 2000.

H.     Time element loss means Business Interruption, Extra Expense, Rental Value, Leasehold Interest, Contingent Business Interruption, Interdependency, Ingress/Egress, and Interruption by Civil or Military Authority.

MMC 00013

ULGU-470-A CW (5/98)

COPY

# Endorsement 3

**ZURICH**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | PRODUCER | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
| PPR 2894226 01 | 07/01/1999 | 07/01/2000 | 07/01/1999 | 50452000 | None | None |

**Named Insured:**          DIAGEO, INC.

**Address (including ZIP Code): 200 SOUTH 6TH STREET**
**MINNEAPOLIS, MN 554021**

---

### This endorsement modifies insurance provided by the following:

### Schedule of Tax / Surcharge

---

| | |
|---|---|
| Surcharge FL | $106.07 |
| Surcharge KY | $12,682.33 |
| Surcharge NY | $212.48 |
| Surcharge WV | $0.44 |

MMC 00014



GRAND METROI  ...AN INC. AND GUINNESS AMER.  ...OLDINGS, INC.

## INDEX

Page Numbers

| | | |
|---|---|---|
| 1. | Term of Insurance | 3 |
| 2. | Participation | 3 |
| 3. | Limits of Liability | 3 |
| 4. | Deductible | 4 |
| 5. | Loss Payable | 5 |
| 6. | Territory | 5 |
| 7. | Coverage | 5 |
| 8. | Perils Insured Against | 17 |
| 9. | Perils Excluded | 17 |
| 10. | Property Excluded | 21 |
| 11. | Valuation | 22 |
| 12. | Earthquake and Flood | 24 |
| 13. | Fire Brigade Charges and Extinguishing Expenses | 25 |
| 14. | Debris Removal | 25 |
| 15. | Demolition and Increased Cost of Construction | 26 |
| 16. | Expediting Expense | 26 |
| 17. | Contributing Insurance | 27 |
| 18. | Excess Insurance | 27 |
| 19. | Underlying Insurance | 27 |
| 20. | Other Insurance | 27 |
| 21. | Subrogation | 27 |
| 22. | Salvage and Recoveries | 28 |
| 23. | Brand of Trademark | 28 |
| 24. | Machinery | 28 |
| 25. | Errors or Omissions | 29 |
| 26. | Notice of Loss | 29 |
| 27. | Proof of Loss | 29 |
| 28. | Partial Payment of Loss | 29 |
| 29. | Loss Adjustment Expenses | 29 |
| 30. | Appraisal | 29 |
| 31. | Consequential Loss | 30 |
| 32. | Pair or Set | 30 |
| 33. | Assistance and Cooperation of the Insured | 31 |
| 34. | Sue and Labor | 31 |
| 35. | Payment of Loss | 31 |
| 36. | Reinstatement | 31 |
| 37. | Suit Against the Company | 31 |
| 38. | Certificates of Insurance | 31 |
| 39. | Cancellation | 32 |
| 40. | Titles of Paragraphs | 33 |
| 41. | Loss Adjusters | 33 |
| 42. | Joint Loss Agreement | 33 |

COPY

OF ORIGINAL POLICY

COPY

MMC 00015

GRAND METROI    . AN INC. AND GUINNESS AMER.    . .OLDINGS, INC.

Grand Metropolitan Inc. and Guinness America Holdings Inc. and all subsidiary
companies

and its affiliated, subsidiary, and associated companies
and/or corporations as now exist or may hereafter be
constituted or acquired including their interests
as may appear in partnerships or joint ventures

## HEREINAFTER REFERRED TO AS THE "INSURED"

### 1.    TERM OF INSURANCE

In consideration of $ 4,024,043 annual premium, this policy attaches and
covers for a Period of one year from 12:01 AM standard time (at the location
of the property involved) July 1, 1998 to July 1, 1999 GMT.

### 2.    PARTICIPATION

This policy covers for a 100% percent interest in this insurance, and this
Company shall not be liable for more than 100% percent of the limits of
liability set forth herein.

### 3.    LIMITS OF LIABILITY

The Limit of Liability of this Company in respect of any one loss or series of
losses resulting from any one incident as insured under this policy shall be full
value subject to the following any one occurrence sub limits:

a.    With respect to the peril of earthquake in California, this Company
shall not be liable, in any one policy year, for more than its proportion
of $116,424,000.

b.    With respect to the peril of earthquake in all States excluding
California, this Company shall not be liable, in any one policy year, for
more than its proportion of $300,000,000.

c.    With respect to the peril of flood, this Company shall not be liable, in
any one policy year, for more than its proportion of $300,000,000.

d.    With respect to loss or damage to electrically or mechanically operated
plant under hire to the Insured and continuing charges from loss or
damage to such plant the Liability of this Company is limited to
$83,160,000 any one loss or series of losses resulting from any one
incident.

e.    Other limits as specified herein.



GRAND METRO. ___TAN INC. AND GUINNESS AMER. ↳ HOLDINGS, INC.

4.    DEDUCTIBLE

a.    All losses, damages, or expenses arising out of any one Occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $100,000, except with respect to the following:

(1)    As respects the peril of windstorm for tier one counties in New Jersey, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, Alaska and Hawaii, at each location sustaining loss or damage, a sum equal to two percent (2%) of the reported value applied separately to:

   i.    each building sustaining damage.
   ii.    Machinery and equipment in each building.
   iii.    Stock and inventory in each such building.
   iv.    12 months business interruption or other time element loss.

*or*

$250,000 per occurrence, whichever is greater.

(2)    As respects the peril of earthquake shock in California, at each location sustaining loss or damage, a sum equal to five percent (5%) of the reported value applied separately to:

   i.    each building sustaining damage.
   ii.    Machinery and equipment in each building.
   iii.    Stock and inventory in each such building.
   iv.    12 months business interruption or other time element loss.

*or*

$250,000 per occurrence, whichever is greater.

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence.

b.    If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

c.    The deductible amounts specified in Clause a. above shall not apply to general average contributions and salvage charges



COPY

GRAND METRO. ___ ;'AN INC. AND GUINNESS AMER. ...OLDINGS, INC.

5.    **LOSS PAYABLE**

Loss, if any, under this policy will be adjusted by the Company or other designated adjuster as agreed to by the Insured and the Company. In all instances, loss will be adjusted with an authorized representative of the Insured and be payable as directed. The receipt by the payee(s) so designated will constitute a release in full of all liability with respect to such loss.

6.    **TERRITORY**

This policy applies:

a.    anywhere in and in transit within or between the Continental United States of America, excluding inter-coastal shipments to or from Alaska; and

b.    anywhere in and in transit within the State of Hawaii.

7.    **COVERAGE**

Except as hereinafter excluded, this policy covers:

a.    **Real and Personal Property**

(1)    The interest of the Insured in all real and personal property (including improvements and betterments) owned, used, or intended for use by the Insured, or here-after constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly.

In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

Provided that the Liability of this Company

(a) in respect of loss or damage to:

i)    property while in course of construction, erection, installation, and assembly

ii)    deeds and other documents (including stamps thereon) and computer systems records while temporarily removed to any premises not in the Insured occupation and in transit

iii)    fine arts

iv)    property stored anywhere other than at the premises in



GRAND METROPOLITAN INC. AND GUINNESS AMERICA HOLDINGS, INC.

the occupation of the Insured

is limited to $83,160,000 any one loss or series of losses resulting from any one incident per item.

(b) in respect of capital additions, alterations or extensions to any Real or Personal Property as described in Clause a. is subject to this Company being notified as soon as reasonably practicable if any one of such capital additions, alterations or extensions increase the value of the property by $83,160,000.

(2)    The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by contract, whether written or oral, for such property.

(3)    At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured. Provided that the Liability of this Company in respect of this item is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

(4)    Contractors' and vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral.

(5)    costs or expenses incurred by the Insured in:-
       a)       modifying computer equipment or
       b)       replacing computer records and reinstating programs
                and/or information thereon
       (whichever is the less) to achieve compatibility in the event that loss, damage, or destruction to computer and/or associated equipment to real or personal property as described in Clause a. by any of the Perils Insured Against during the term of this policy has resulted in undamaged computer records being incompatible with the replacement computer equipment. Provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

b.    Business Interruption

(1)    Loss resulting from necessary interruption of business conducted by the Insured and caused by loss, or destruction by any of the Perils Insured Against during the term of this policy to real or personal property as described in Clause a. Provided that the Liability of this Company in respect of interruption in consequence of loss, or destruction to property while in course

COPY

GRAND METRO, ___ AN INC. AND GUINNESS AMER, , HOLDINGS, INC.

of construction, erection, installation and assembly (or to property in transit where it is intended to be used for such construction, erection, installation or assembly) is limited to $83,160,000 any one loss or series of losses resulting from any one incident

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of actual loss sustained by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses (including ordinary payroll), only to the extent that these must necessarily continue during the interruption of business and only to the extent to which such charges and expenses would have been earned had no loss occurred.

(3) "Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contracts and other important employees.

(4) In the event of loss, damage, or destruction to property described in Clause a. caused by any of the Perils Insured Against herein which results in an interruption of research and development activities which in themselves would not have produced income during the Period of Recovery, this policy shall cover the actual loss sustained of the continuing fixed charges and, expenses, including ordinary payroll, directly attributable to such research and development activities. Provided that the Liability of this Company in respect of this item is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

(5) However, this Company shall not be liable for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(6) Resumption of Operations: If the Insured could reduce the loss resulting from the interruption of business:

(a) by a complete or partial resumption of operation of the property insured, whether damaged or not; or

(b) by making use of available stock, merchandise, or other property;

ε

COPY

such reduction shall be taken into account in arriving at the amount of loss hereunder.

(7)  Experience of the Business:

(a)  In determining the amount of net profit, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

(b)  With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation or assembly.

c.  Extra Expense

(1)  Extra expense incurred resulting from loss, damage, or destruction to property by any of the Perils Insured Against during the term of this policy. Provided that the Liability of this Company in respect of :

(i)  public relations expenses insured by this item
(ii)  additional rental payable on computers and associated equipment arising out of the replacement of a lease or hire agreement by a new contract
(iii)  *all other Extra Expense other than Increase Cost of Working*

is limited to $83,160,000 any one loss or series of losses resulting from any one incident per item.

(2)  "Extra expense" means the excess of the total cost during the period of restoration of the damaged property chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss or damage occurred.

(3)  "Increase Cost of Working" means additional expenditure necessarily incurred and reasonably incurred for the sole purpose of avoiding or diminishing loss under Clause b. which but for that expenditure would have taken place during the Period of Recovery in consequence of Perils Insured Against



GRAND METRO. ᴛ⊓᠊ᴛᴀN INC. AND GUINNESS AMER ⊓OLDINGS, INC.

but not exceeding the amount of reduction thereby avoided.

d. __Rental Value__

(1) Rental value loss sustained by the Insured resulting directly from the necessary untenantability caused by loss, damage, or destruction by any of the Perils Insured Against during the term of this policy to real or personal property as described in Clause a. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability.

(2) For the purposes of this insurance, "rental value" is defined as the sum of:

(a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

(b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

(3) __Experience of the Business__

(a) In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

(b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

Provided that Liability of this Company in respect of rent from private dwelling houses is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

e. __Royalties__

ε



GRAND METRO: _AN INC. AND GUINNESS AMER. _OLDINGS, INC.

(1) Loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realisable due to loss, damage or destruction by any of the Perils Insured Against during the term of this policy to property of the other party. Provided the Liability of this Company in respect of royalties shall be $16,632,000 any one loss or series of losses resulting from any one incident.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of actual loss sustained of such income referred to in paragraph 1 above, which would have been earned had no loss occurred.

(3) Resumption of Operations: The Insured shall influence, to the extent possible, the party with whom the agreement described in paragraph 1 above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

(4) Experience of the Business: In determining the amount of income derived from the agreement(s) described in paragraph 1 above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

f. Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages

(1) Period of Recovery: The length of time for which loss may be claimed:

(a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged;

(b) and, such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(i) the date on which the liability of the Company for loss or damage would otherwise terminate; or



GRAND METROI    ⌐ıАN INC. AND GUINNESS AMER⌐    ⌐nOLDINGS, INC.

      (ii)  the date on which repair, replacement or rebuilding of such part of the property as has been damaged is actually completed;

but in no event for more than one year thereafter from said letter commencement date;

    (c)  with respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly shall be determined as provided in (a) above but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operation;

    (d)  shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy.

(2)  <u>Special Exclusions:</u>  This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the reoccupancy of the premises

(3)  <u>Expenses to Reduce Loss:</u>  This policy also covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy; such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

(4)  <u>Extension of Coverage:</u>  This policy, subject to all provisions and without increasing the amount of said policy, also insures against loss resulting from damage to or destruction by the Perils Insured Against, of:

    (a)  electrical, steam, gas, water, telephone, and other transmission lines and related plants, substations and equipment situated on or outside of the premises excluding satellites, provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident;

    (b)  property that directly or indirectly prevents a supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents a receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, provided that the Liability



GRAND METRO    _. rAN INC. AND GUINNESS AMER.    . ./OLDINGS, INC.

of this Company in respect of this extension is limited to
$116,424,000 any one loss or series of losses resulting from
any one incident;

(c) dams, reservoirs, or equipment connected therewith when
water, used as a raw material or used for power or for other
manufacturing purposes, stored behind such dams or
reservoirs is released from storage and causes an interruption
of business as a result of lack of water supply from such
sources, provided that the Liability of this Company in
respect of this extension is limited to $83,160,000 any one
loss or series of losses resulting from any one incident.

(5)   Interdependency: - This policy is extended to cover the loss
sustained by the Insured anywhere in the world caused by loss,
damage, or destruction by any of the Perils Insured Against
during the term of this policy to real or personal property as
described in Clause a. situated worldwide.

(6)   Interruption by Civil or Military Authority: This policy is
extended to cover the loss sustained, as a direct result of a Peril
Insured Against, access to real or personal property is
prohibited by order of civil or military authority. Provided that
the Liability of this Company in respect of this extension is
limited to $83,160,000 any one loss or series of losses resulting
from any one incident.

(7)   Ingress/Egress: This policy is extended to cover the loss
sustained, as a direct result of a Peril Insured Against, ingress
to or egress from real or personal property is thereby prevented.
Provided that the Liability of this Company in respect of this
extension shall be limited to $83,160,000 any one loss or series
of losses resulting from any one incident.

(8)   This policy is extended to cover
a)   fines or damages for breach of contract
b)   loss of interest by the Insured and
c)   Loss of Interest by the Insured's Customers

the amount payable as indemnity hereunder shall be:

a)   in respect of fines or damages for breach of contract such
sums as the Insured shall be legally liable to pay and shall
pay in discharge of fines or damages incurred for non-
completion or late completion of orders or contracts solely
in consequence of loss, damage, or destruction by any of
the Perils Insured Against during the term of this policy to
Real or Personal Property as described in Clause a.



GRAND METRO. ___fAN INC. AND GUINNESS AMER. .HOLDINGS, INC.

(4)    Other expenses, when reasonably incurred by the Insured in re-establishing records of accounts receivable following such loss or damage.

Provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1)    The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2)    The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

i.    Leasehold Interest

(1)    Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

(a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;



GRAND METRO₁ ...TAN INC. AND GUINNESS AMERI ...HOLDINGS, INC.

    (b)    improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

    (c)    the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenantable by any of the Perils Insured Against during the term of this policy and the lease is cancelled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and

(2)    (a)    "Interest of the Insured as Lessee" when property is rendered wholly or partially untenantable by any of the Perils Insured Against during the term of this policy and the lease is cancelled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located.

    (b)    The "Interest of the Insured as Lessee" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3)    Definitions:

The following terms, wherever used in this section shall mean as follows:

    (a)    the "Interest of the Insured as Lessee" is defined as:

        (i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

        (ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.



GRAND METROP        AN INC. AND GUINNESS AMERI        OLDINGS, INC.

(b)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

(4)    This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

Provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

8.    **PERILS INSURED AGAINST**

This Policy insures against all risk of physical loss of or damage to property described herein, except as hereinafter excluded.

Physical loss or damage shall include any destruction, distortion or corruption of any computer data, coding, program or software except as hereinafter excluded.

9.    **PERILS EXCLUDED**

The policy does not insure:

a.    against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

(1)    cause the Insured to sustain such loss; and

(2)    obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment;

b.    against the cost of making good defective design or specifications, faulty material, or faulty workmanship unless loss or damage not otherwise excluded ensues, and then this policy shall only cover for such ensuing loss or damage if resulting loss or damage is from a peril insured herein;



c.   against electrical injury or disturbance to electrical appliances, devices, or wiring caused by electrical currents artificially generated unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage. However, this exclusion shall only apply to the extent of coverage that is provided by the Insured's boiler and machinery policy;

d.   against mechanical breakdown unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage. However, this exclusion shall only apply to the extent of coverage that is provided by the Insured's boiler and machinery policy;

e.   against explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, or steam engines owned or operated by the Insured unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage; it is agreed that direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases or combustion therefrom shall be covered hereunder. However, this exclusion shall only apply to the extent of coverage that is provided by the Insured's boiler & machinery policy;

f.   against errors in processing (including computer processing) or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

g.   against ordinary wear and tear, insects or vermin, or gradual deterioration unless other loss or damage from a peril insured against herein ensues and there this policy shall cover for ensuing loss or damage;

h.   against normal settling or shrinkage of walls, doors, or ceilings unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

i.   ~~mysterious disappearance, delay, or loss of market;~~

j.   against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct of indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except:

(1)   if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due



GRAND METRO.    TAN INC. AND GUINNESS AMERI    HOLDINGS, INC.

to nuclear reaction, nuclear radiation, or radioactive contamination;

(2)     this Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises

k.    (1)     against hostile or warlike action in time of peace of war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    (a)     by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

    (b)     or by military, naval, or air forces;

    (c)     or by an agent of any such government, power, authority, or forces;

(3)     against any weapon employing atomic fission or fusion;

(4)     seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

(5)     risks of contraband or illegal trade.

Notwithstanding the above provisions, k(1), (3), (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or

ε



resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war.

l.     Seepage and/or Pollution and/or Contamination Exclusion

Against loss, damage, costs or expenses in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever. Nevertheless if a peril not excluded from this policy arises directly or indirectly from seepage and/or pollution and/or contamination any loss or damage insured under this policy arising directly from that peril shall (subject to the terms, conditions and limitations of the policy) be covered.

However, if the insured property is the subject of direct physical loss or damage for which this Company has paid or agreed to pay then this policy (subject to its terms and conditions and limitations) insures against direct physical loss or damage to the property insured hereunder caused by resulting seepage and/or pollution and/or contamination.

Provided that the Liability of this Company in respect of all seepage and/or pollution and/or contamination other than by a Defined Peril is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

Defined Peril shall mean fire, lightning, explosion, aircraft or other aerial devices or articles dropped therefrom, riot civil commotion, strikers, locked out workers, persons taking part in labor disturbances, malicious persons other than thieves, earthquake, storm, flood. Bursting or overflowing discharging or leakage of water ranks, apparatus or pipes, sprinkler leakage or impact by any road vehicle or animal.

The Insured shall give notice to this Company of intent to claim no later than 12 months after the date of the original physical loss or damage.

m.     against asbestos removal unless the asbestos is itself damaged by fire, lightning, wind, hail, leakage from fire protective equipment, explosion, smoke, aircraft, vehicles, sonic shock wave, riot, civil commotion, vandalism/malicious mischief, molten material, acts by civil or military authority, collapse, water damage, earthquake, earth movement, landslide, sinkhole, or flood.

All other terms and conditions remain unchanged.



GRAND METRO.    ..TAN INC. AND GUINNESS AMER.    .HOLDINGS, INC.

b) in respect of loss of interest by the Insured the amount of interest which the Insured would have earned had the processing of transactions not been prevented or delayed as a consequence loss, damage, or destruction by any of the Perils Insured Against during the term of this policy to Real or Personal Property as described in Clause a.

c) in respect of loss of interest by the Insured's customers the amount of compensation which the Insured shall be required to pay their customers but not exceeding the interest which the customers would have earned had the processing of transactions not been prevented or delayed as a consequence loss, damage, or destruction by any of the Perils Insured Against during the term of this policy to Real or Personal Property as described in Clause a.

Provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

(9)    this policy is extended to cover loss sustained by the Insured resulting from the depreciation in value of stock, insured under this policy, held and/or for which purchase contracts have been signed, due to the Insured's inability to process such stock in the normal manner solely as a result of loss of or destruction by any of the Perils Insured Against during the term of this policy to Real or Personal Property as described in Clause a.

The amount payable as indemnity shall not exceed the cost to the Insured of the stock less any amount it is possible to save by alternative processing of the stock or the sale of the stock and any amount saved in respect of charges for handling and transport not incurred as a result of the damage.

Provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

g.    Transit

(1)    Property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including coastal waters thereof, by means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for used for any outbound or used for inbound shipment, including during

deviation and delay, until safely delivered and accepted at place of final destination

(2) This insurance is extended to cover loss or damage to property:

(a) sold and shipped by the Insured under the terms of F.O.B point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

(c) occasioned by acceptance by the Insured, by its agents, or its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

(d) at the Insured's option, which is incoming to the Insured

(3) (a) The Insured may waive rights of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehousemen, or processor.

(b) with respect to shipments described under subparagraphs 2(a) and 2(d) above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured

(4) The Insured is not to be prejudiced by any agreements exempting lightermen from liability

(5) Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured

h. Accounts Receivable

(1) All sums due the Insured from customers, provided the Insured is unable to effect collection therefore as the direct result of loss of or damage to records of accounts receivable;

(2) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3) Collection expense in excess of normal collection cost and made necessary by such loss or damage;



GRAND METRO₁    . .AN INC. AND GUINNESS AMER₁    . ₁OLDINGS, INC.

Exclusions c., d., e., and f. do not apply to alterations, additions, and property while in the course of construction, erection, installation, or assembly.

Exclusions c., d., and e., do not apply to electronic data processing systems nor to valuable papers and records.

Exclusion e. does not apply to locomotives, rolling stock, or other conveyances insured herein.

n.  Against destruction, distortion or corruption of any computer data, coding, program or software directly or indirectly caused by or contributed to by or arising from any form of computer virus.

Notwithstanding the above provision this insurance shall cover:

1.  The costs reasonably incurred by the Insured in respect of:

   a)  Tracing, identifying and removing any virus manifested in the Insured's computer system;

   b)  reinstating computer programs or data onto data-carrying media used by the Insured (including the cost of clerical labor and research expended in reproducing such records);

   c)  avoiding or diminishing the interruption of business covered under Clause b..

2.  business interruption as covered under Clause b.

in consequence of destruction, distortion or corruption of any computer data, coding, program or software directly or indirectly caused by or contributed to by or arising from any form of computer virus during the term of this policy.

Provided that the Liability of the Company in respect of 1) & 2) above is limited to $83,160,000 any one loss or series of losses arising from one incident.

---

10.  PROPERTY EXCLUDED

This policy does not cover loss or damage to:

a.  Money, securities, currency, deeds, and evidences of debt;

b.  Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements (i.e. parking lots, landscaping, etc.) as described hereunder are defined as any alteration to the natural condition



of the land by grading, landscaping, earthen dikes or dams, as well as additions to land such as pavements, roadways, or similar works;

c.    Growing crops, standing timber, and animals except of research;

d.    Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this motor vehicle exclusion shall not apply to contractor's equipment;

e.    Waterborne shipments to and from Hawaii,

f.    Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last. Water, except for water used in processing and/or manufacturing or contained in holding tanks;

g.    Transmission and distribution lines; however, this policy will provide coverage for loss or damage which results from damage to transmission and distribution lines.

## 11.    VALUATION

At the time of loss, the basis of adjustment unless otherwise endorsed herein shall be as follows:

a.    Stock in process at the value of raw materials and labor expended, plus the proper proportion of overhead charges

b.    Finished stock and merchandise not manufactured by the Insured at the regular cash selling price less all discounts and charges to which such stock would have been subject had no loss occurred. It is further understood and agreed that finished stock may require further processing to meet the specifications of a purchaser. Finished stock shall include products having an established market value at the time of loss even though such stock would have been subject to further processing prior to sale if loss had not occurred;

c.    On raw stock and supplies at replacement cost new;

d.    Improvements and betterments at replacement cost new at time and place of loss;



GRAND METRO. ...TAN INC. AND GUINNESS AMER: ...HOLDINGS, INC.

e.    Valuable papers and records: the cost to repair or replace the property with other of like kind and quality including the cost of gathering and/or assembling information;

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media but not including money and/or securities.

The term "securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets but does not include money;

f.    Property at conventions, exhibitions, displays or fairs at replacement cost new to Insured;

g.    Patterns, moulds, and dies at replacement cost new;

h.    Automobiles, trucks, and trailers therefore, at the replacement cost for similar new vehicles, comparably equipped;

i.    Artwork at the latest amount reported by the Insured for an article that is totally destroyed or lost; any such article that has not been reported, at the market value at the time of loss. Partial losses at the cost to restore the article to its condition before the loss plus any reduction in market value after restoration has been completed, but in no event for more than the insured value;

j.    Contractors equipment at replacement cost if actually replaced; if not so replaced at actual cash value on date of loss;

k.    Wines and Spirits Valuation

(1)    In respect of such stock for inclusion in blended products

The current selling price of the blended product in which such stock would have been incorporated less:

(i)    the cost of bottling materials unless bottled at the time of the loss or damage;



GRAND METRO.    .AN INC. AND GUINNESS AMER.    .OLDINGS, INC.

    (ii)    undamaged stock which would have been included in the blend had the loss or damage not occurred;

    (iii)    stock not yet purchased which would have been included in the blend had the loss or damage not occurred.

(2)    In respect of such stock for sale either as a vintage wine or as an unblended spirit:

The current selling price of the product at the age at which the products, but for the loss or damage, would have been sold, less:

    (i)    the cost of bottling materials unless bottled at the time of the loss or damage;

    (ii)    undamaged stock which would have been included in the blend had the loss or damage not occurred;

    (iii)    stock not yet purchased which would have been included had the loss or damage not occurred.

(3)    Declaration of a Vintage

If after the payment of a loss under this policy the wine, suffering loss or damage shall have been produced in a year which has subsequently declared to be a vintage year, then the Insurer agrees to pay to the Insured the increase in value of the said wine in consequence of it having been declared as a vintage wine.

l.    Other property not otherwise specified at replacement cost new.

12.    **EARTHQUAKE AND FLOOD**

a.    Each loss by earthquake, volcanic action, or flood shall constitute a single loss hereunder.

(1)    If more than one earthquake shock or volcanic action occurs within any period of 72 hours during the term of this policy, the beginning of which 72-hour period may be determined by the Insured; or

(2)    If any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) and the



subsidence of same within the banks of such river(s) or stream(s);

or

(3)  If any flood results from any tidal wave or series of tidal waves caused by any one disturbance;

such earthquake shocks, volcanic action, or flood shall be deemed to be a single occurrence within the meaning of this policy.

b.  Should any time period referred to in "a" above extend beyond the expiration date of this policy and commence prior to expiration, this Company shall pay all such earthquake, volcanic action, or flood losses occurring during such period as if such period fell entirely within the term of this policy.

c.  This Company shall not be liable, however, for any loss caused by any earthquake shock, volcanic action, or flood occurring before the effective date and time or commencing after the expiration date and time of this policy.

13.  FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES

This policy covers the following expenses resulting from a peril insured against:

a.  Fire brigade charges and other extinguishing expenses for which the Insured may be assessed;

b.  loss of fire extinguishing material expended.

14.  DEBRIS REMOVAL

This policy covers the following expenses resulting from a peril insured against:

a.  the cost of removal of debris of property covered hereunder caused by or resulting from a peril not otherwise excluded.

b.  The cost of removal of debris of property not insured hereunder from the premises of the Insured.

c.  This coverage does not include the cost to extract pollutants from land or water or to remove, restore, or replace polluted land or water.



GRAND METRO⸺ ..'AN INC. AND GUINNESS AMER⸺ ...OLDINGS, INC.

    d.    The total liability under this policy for both loss to property and debris removal expense shall not exceed the limit of liability applying in this policy.

## 15.  DEMOLITION AND INCREASED COST OF CONSTRUCTION

In the event of loss or damage under this policy that causes the enforcement of any law or ordinance regulating the construction, repair, or use of property, this Company shall be liable for:

    a.    the cost of demolishing the undamaged property including the cost of clearing the site;

    b.    the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

    c.    increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall note be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

    d.    any increase in the business interruption, extra expense, rental value and royalties loss arising out of the additional time required to comply with said law or ordinance.

    e.    Coverage does not apply under this extension for any costs associated with the enforcement of any ordinance or law which requires the Insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effect of "pollutants".

Furthermore this policy extends to cover the additional cost of reinstatement of any sprinkler system and/or water supplies pertaining thereto solely by reason of this Company requiring conformity *[ US equivalent to Loss Prevention Council Rules for Automatic Sprinkler Installations]*. Provided that the Liability of this Company in respect of this extension is limited to $83,160,000 any one loss or series of losses resulting from any one incident.

## 16.  EXPEDITING EXPENSE

This policy covers the reasonable extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

COPY

GRAND METRC   . .AN INC. AND GUINNESS AMEI   .OLDINGS, INC.

17. CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy, This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

18. EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

19. UNDERLYING INSURANCE

A. Underlying insurance is insurance on all or any part of the deductible and against all or any of the Perils Insured Against this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered "other insurance".

20. OTHER INSURANCE

Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount due from such other insurance.

21. SUBROGATION

The Company shall be entitled to pursue for their own benefit and at their own expense in the name of the Insured any rights against parties other than the Insured resulting from claims under this Policy. The Insured shall, at the request and at the expense of the Company, do and concur in doing and permit to be done all such acts and things as may be necessary or reasonably required by the Company for the purpose of enforcing such rights



GRAND METRO₁  ₁AN INC. AND GUINNESS AMER₁  ₁OLDINGS, INC.

Notwithstanding the foregoing, it is agreed that at the request of the Named Insured, the Company agrees to waive all rights of subrogation against Diageo plc subsidiary companies and/or Joint Ventures not insured under this Policy.

Furthermore the Company agrees to waive all rights of subrogation against any person including any insurer of such person as is required by any contract entered into by the Insured to the extent required by such contract

### 22.   SALVAGE AND RECOVERIES

All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

### 23.   BRAND OR TRADEMARK

In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of the damaged goods. The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods

### 24.   MACHINERY

In case of loss or damage by a peril insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.



GRAND METRO.    .. . AN INC. AND GUINNESS AMER.    . .OLDINGS, INC.

25.   ERRORS OR OMISSIONS

Any unintentional error or omission made by the Insured in reporting values or locations shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the *Insured's home office insurance department.*

Provided that the Liability of this Company in respect of this extension is $83,160,000 any one loss.

26.   NOTICE OF LOSS

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars to Marsh Inc., 1166 Avenue of the Americas, New York, NY 10036-2774 for transmission to this Company.

27.   PROOF OF LOSS

It shall be necessary for the Insured to render a signed and sworn proof of loss to the Company or its appointed representative stating: the place, time, and cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

28.   PARTIAL PAYMENT OF LOSS

In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

29.   LOSS ADJUSTMENT EXPENSES

This Policy is extended to include necessary expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

30.   APPRAISAL

If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the



Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

31.    CONSEQUENTIAL LOSS

This policy insures against:

a.    consequential loss to the property insured caused by change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from a peril insured against. However, it is agreed that exclusions c., d., and e. contained in Section 9, "Perils Excluded" shall not apply to this extension when such loss or damage occurs at a location which is not owned or operated by the Insured;

b.    the reduction in value to the remaining part or parts of any lot of merchandise or other insured property usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a peril insured against.

32.    PAIR AND SET

Except as provided under Section 24 and Clause 31 b., in the event of loss or damage by a peril insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

a.    the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

b.    the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.



GRAND METROPOLITAN INC. AND GUINNESS AMERICA HOLDINGS, INC.

33.  **ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

34.  **SUE AND LABOR**

In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the, expenses so incurred according to the rate and quantity of the sum herein insured.

35.  **PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

36.  **REINSTATEMENT**

With the exception of loss subject to annual aggregate limits as noted in Clause 3., no loss hereunder shall reduce the amount of this policy.

37.  **SUIT AGAINST THE COMPANY**

No suit or action for the recovery of any claim under this policy will be sustainable in any court of law or equity unless the Insured will have fully complied with all the requirements of this Policy, nor unless commenced within twelve (12) months after the occurrence causing the loss or damage unless a longer period of time is required under the laws of the jurisdiction in which the property is located.

38.  **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued by the Company in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of



GRAND METRO.    .. AN INC. AND GUINNESS AMER    ..OLDINGS, INC.

insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

All parties to whom a certificate of insurance has been issued are automatically added to this policy upon issuance of said certificates, either as additional Insureds or as loss payees, or both, in accordance with the terms and conditions of said certificates.

Copies of all certificates issued under this policy will be filed with this Company but no inadvertent error or omission in so filing certificate copies will prejudice either the Insured and/or the certificate holders. Such errors or omissions, if any, shall be corrected upon discovery by filing copies of such certificates with this Company.

It is hereby understood and agreed that Marsh Inc., 1166 Avenue of the Americas, New York, NY 10036-2774 is granted permission to issue certificates of insurance on behalf of this Company and copies will be sent to this Company as soon as practicable.

39.    CANCELLATION

a.    This policy may be cancelled at any time at the request of the Insured or it may be cancelled by the Company by mailing to the Insured at:

Diageo Inc.
200 South 6th Street
Minneapolis, MN  55402-1464

And to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

b.    The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

c.    Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will be in full force until such property is safely delivered and accepted at place of final destination



d.  This policy may be cancelled by the Company if premium is not paid within 10 days after such premium is due the Company.

## 40.  TITLES OF PARAGRAPHS

The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 41.  LOSS ADJUSTERS

It is hereby understood and agreed that each and every loss will be adjusted by:

Crawford Technical Services
45 Broadway
New York, NY 10006

unless otherwise agreed by the Insured and the Company.

## 42.  JOINT LOSS AGREEMENT

With respect to insurance provided by this policy, it is agreed that:

a.  If at the time of loss, there is in existence a policy(ies) issued by either this Company or by a boiler & machinery insurance company which may cover the same property or cover the location at which the property subject to loss is situated; and

b.  If there is a disagreement between the Companies under this policy and such other contract either as to:

(1)  whether such damage or destruction was caused by a peril insured against by this policy or by an accident insured against by such boiler & machinery insurance policy;

or

(2)  the extent of participation of this policy and of such boiler & machinery insurance policy in a loss which is insured against, partially or wholly, by any one or all of said policies;

this Company shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in



disagreement, but in no event more than this Company would have paid if there have been no boiler & machinery insurance policy in effect, subject to the following conditions:

(1)    after the amount of loss is agreed upon by the Insured and after provision has been made for the payment of undisputed claims under said policies, the minimum amount(s) remaining payable under this policy and the other policy shall then be subject to the terms of this agreement;

(2)    the boiler & machinery insurance company shall simultaneously pay to the Insured at lease one-half of said amount which is in disagreement;

(3)    the payments by the companies hereunder and acceptance of the same by the Insured signify the agreement of the companies to sublimit to and proceed with arbitration within 90 days of such payments;

The arbitrators shall be three in number, one of whom shall be appointed by the boiler & machinery insurance company, one of whom shall be appointed by this Company, and the third of whom shall be appointed by consent of the other two; the decision by the arbitrators shall be binding on the companies, and that judgment upon such award may be entered in any court of competent jurisdiction;

(4)    the Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

(5)    the provisions of this section shall not apply unless such other policy issued by the boiler & machinery insurance company is similarly endorsed;

(6)    acceptance by the Insured of sums paid pursuant to the provisions of this section, including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the Insured against any of the companies.



GRAND METROF        AN INC. AND GUINNESS AMERI        OLDINGS, INC.

Attached to and forming part of Policy No. PPR2894226-00

of the Zurich Insurance Company

MMC 00048

