# EXHIBIT F



**Technical Services**

Desmond Sullivan
Executive General Adjuster
Desmond_Sullivan@us.crawco.com

April 8, 2004

General Mills Bakeries and Food Service
200 South Sixth Street
Minneapolis, MN 55402-1464

Attention:  Mr. Brent Robbins
            Counsel

Subject:    Insured                      : Diageo Inc.
            Incident                     : Accidental Damage to Product
            Date of Incident             : On or About June 20, 2001
            Location                     : Pillsbury Martel Plant, Ohio
            Policy Number                : PPR 2894226 02
            Insurers Reference Number    : 510-0020793

Dear Mr. Robbins:

I have been instructed to write to you in order to set out the Insurer's position in relation to the claim as submitted by The Pillsbury Company, under the above numbered policy, in the amount of $12,298,191 arising out of the above incident and summarized as under:

| | |
|---|---|
| Reimbursement to customers | $ 5,242,598 |
| Premix lost and destruction costs | $ 2,555,602 |
| Unsold Product | $ 4,246,887 |
| Other Costs Incurred | $   253,104 |
| Total | $12,298,191 |

As you are aware, a considerable amount of documentation was presented in support of this claim and this has been the subject of a detailed review by both ourselves and Matson Driscoll and & Damico (MDD), the forensic accountants appointed by the Insurer to assist us in our assessment of this loss.

First, I will set out our assessment of the claim and, following this; I will explain the application of the deductibles to the assessed loss.

*Loss Assessment*:

Attached to this letter is a narrative report, together with a series of schedules that MDD has been asked to prepare to assist you in better understanding our assessment.

*Reimbursement to customers-Amount claimed $5,242,598*

The claim for payments to customers was calculated based upon Pillsbury's sales price to those customers with the exception of Schwann's, for whom Pillsbury calculated the final retail sales price to the consumer. The valuation clause in the policy endorsement # 5- Seepage/Pollution/Contamination exclusion endorsement – specifically provides that the basis of settlement for product no longer belonging to the Insured is the cost of replacing the contaminated product.

The product cost claimed of $2,549,659 represents Pillsbury's selling price. As shown on their summary schedule, MDD has adjusted this claimed amount to $2,710,573 due to a reallocation of Schwann's costs. A 61.7% factor has then been applied to calculate a replacement cost amount, including distribution costs of $1,672,124. This amount was then reduced to $1,496,819, as shown on the schedules, to reflect a deduction of fixed manufacturing expenses.

The freight costs were found to be correctly stated in the sum of $244,446.

When MDD reviewed the destruction and administrative costs it was found that these needed more accurate categorization and, in fact, we separately identified customer lost profits and customer recall costs. However we are excluding both these categories from our loss assessment because this policy indemnifies the Insured for its loss arising from the occurrence of an insured peril, not those of its customers.

Thus our assessment of this portion of the claim is in the amount of $2,006,713.

2

*Premix Loss and Destruction Costs-Amount claimed $2,555,602*

The destroyed premix was mainly at the Martel plant, with some additional quantities in St. Louis and Vinita. The claimed value on premix is based upon total manufacturing costs. The proposed loss amount excludes those fixed manufacturing expenses that are not incremental and therefore will not be incurred as above-normal costs upon replacement of the damaged product.

The freight and destruction costs are being allowed in full as they are properly supported by invoice documentation.

However, the claimed incremental plant costs have not been properly documented and appear to include expenses that are most likely not above-normal costs incurred in replenishing lost production. While some of the claimed costs are for overtime premium incurred in making up lost production, which have been allowed, there are substantial amounts claimed for extra maintenance costs, utilities and other undocumented items. These have not been allowed but, in the event that additional documentation and explanation were received to demonstrate these costs were in excess of amounts already allowed for in the value of the unsold product, then Insurers may be prepared to give consideration to such costs.

Our assessment of this portion of the loss is in the amount of $2,014,378.

*Unsold Product-Amount claimed $4,246,887*

This portion of the claim is basically calculated in two parts:

1. The value of finished goods, comprising 320,184 cases of product, extended by the total manufacturing costs per unit.
2. Lost profit - this assumes sales were lost during the period immediately following the recall of the 320,184 cases of unsold product.

3

However as per the policy valuation clause, MDD has been instructed to value the unsold product in Pillsbury's possession at selling price, less unincurred selling expenses. This results in a calculated loss of $4,261,904, an increase of $15,017 above the amount claimed.

### *Other Costs Incurred - Amount claimed $253,104*

The public relations costs of $136,914 are not included in our assessment since the claimed amount is simply an allocation of normal internal costs, not an increased expense as a result of the loss.

Conversely, consulting services have been allowed since these are invoiced expenses for an outside consulting firm.

In summary, our assessment of the loss is as follows:

| | |
|---|---|
| Reimbursement to customers | $ 2,006,713 |
| Premix Loss and destruction costs | $ 2,014,378 |
| Unsold Product | $ 4,261,904 |
| Other costs Incurred | $   116,190 |
| Sub heading | $ 8,399,185 |

### *Application of Policy Deductibles*

The Renewal Certificate Declarations attaching to the policy as issued by Zurich American Insurance Company state "As respects the peril of seepage and/or contamination all losses, damages or expenses arising out of any one Occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $7,569,500."

Furthermore endorsement 5 of the policy stipulates that "A deductible of $151,390 any one loss or series of losses resulting from one incident applies to the cost of withdrawal

4

coverage." As this deductible applies to a separate wording attached to the policy by endorsement, it must also be separately applied to the loss.

Accordingly, we have assessed the Insurer's liability for this claim to be as follows:

| | |
|---|---|
| Assessed Loss | $ 8,399,185 |
| Less Deductible for seepage and/or contamination losses | $ 7,569,500 |
| Less Deductible applying to withdrawal expenses | $   151,390 |
| Net Assessed Loss | $   678,295 |

In the event that you require any additional explanation of our assessment, or you consider it necessary to meet, then I will be glad to arrange this. Furthermore, if there is any additional information and/or documentation you wish to submit, please do so and this will be given careful consideration.

Enclosed is a Proof of Loss made out at the above amount and I would be grateful if you could execute and return this to me. Upon receipt of this executed document, the Insurer will pay this undisputed amount without prejudice to either the rights of the Insured or the Insurer.

Also, this letter is issued without prejudice to the rights of either the Insurer or the Insured under the terms and conditions of this policy.

Yours sincerely,
**CRAWFORD TECHNICAL SERVICES**

Desmond Sullivan
Executive General Adjuster

DS:ap

Enclosure:

5

1.  MDD schedule

cc:    Mark Feinberg