# EXHIBIT C

```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MINNESOTA


   THE PILLSBURY COMPANY, a corporation, )
                                         )
              Plaintiff,                 )
                                         )
       vs.                               ) 03-6560 DSD/SRN
                                         )
   ZURICH AMERICAN INSURANCE COMPANY,    )
                                         )
              Defendant.                 )
```

         The deposition of KEVIN McCOY, called by
the Plaintiff for examination, pursuant to notice and
pursuant to the Rules of Civil Procedure for the
United States District Courts pertaining to the taking
of depositions, taken before Erin McLaughlin, CSR, at
10 South LaSalle Street, Suite 1600, Chicago,
Illinois, on Monday, April 18, 2005, commencing at the
hour of 9:30 o'clock a.m.




Reported for
LAKE SHORE REPORTING SERVICE, by
Erin McLaughlin, CSR

1  possession as of October 9, 2003 did not contain any
2  endorsement that identified there being a 5 million
3  pound deductible; correct?
4      A   Yes.
5      Q   And this was the policy that you had in
6  your possession, the local policy that you had in your
7  possession as of October 9, 2003?
8      A   Yes, and that policy would have been dated
9  July 1st of 1999 through July the 1st of 2000 which
10 would have been the prior policy year.
11     Q   As of October 9, 2003, had you requested
12 from Zurich underwriting a copy of the policy that
13 Zurich underwriting had issued as of the renewal on
14 July 1st, 2000?
15     A   Yes. I had. If you recall from previous
16 testimony, I received the copy of the policy initially
17 for the policy period of July 1, 1999 through July 1,
18 2000. Sometime thereafter I received the renewal
19 declarations and endorsements, so my response to Roger
20 in this October 9th correspondence is based upon the
21 policy terms and conditions for the prior policy year
22 of July 1, 1999 to July 1, 2000.
23     Q   As of October 9, 2003, what did you have
24 in your possession by way of the local policy for the

```
 1      renewal effective July 1, 2000?
 2           A    The 1990, the previous policy year.
 3           Q    That's it?
 4           A    That's it.
 5           Q    It had no endorsements that were to become
 6      effective July 1, 2000?
 7           A    No.  I had to base my answer based upon
 8      the copy of the policy that I had in my possession.
 9           Q    Did the policy, the local -- Withdrawn.
10                Did the local policy that you had in
11      your possession that was represented to you to have
12      been the renewal policy for the period beginning July
13      1, 2000, did it have on it Endorsement 5 that can be
14      found at pages 7 and 8 of Exhibit Number 2?
15                MR. HOEY: Object to the form of the question.
16      In your question now you have something about a
17      representation.  I don't know by who or when or what
18      was represented, so therefore I object to the
19      question.
20                MS. ST. PETER:  That's a good point.
21           Q    Did Zurich underwriting between the time
22      of your involvement in August of 2002 where a request
23      was made to you about a local policy; correct?
24           A    Incorrect.
```

1  Zurich's legal counsel or outside counsel?
2      A   Outside counsel.
3              (McCoy Deposition
4               Exhibit No. 17 was marked
5               for identification.)
6      Q   Mr. McCoy, if you would, look at Exhibit
7  Number 17, please.
8              For the record, Exhibit 17 consists of
9  an e-mail exchange between Kevin McCoy and Desmond
10 Sullivan that bears Bates numbers ZUKC00240.
11 According to Mr. Sullivan's e-mail to you, on
12 September 24, 2003 he's pointing out to you the
13 insured's attorney is requesting a response to the
14 claim; correct?
15     A   Yes.
16     Q   And you wrote back to Mr. Sullivan on
17 September 25th, 2003, Desmond, good timing on your
18 e-mail.  Underwriters have just yesterday provided me
19 with a copy of the policy.  So is that a correct
20 statement that it wasn't until September 25th, 2000 --
21 Withdrawn.  Is that a correct statement that it wasn't
22 until September 24th, 2003 that you were first
23 provided with a copy of the local policy by Zurich
24 underwriters?

1        A     Yes. That's right. I had my dates wrong
2   earlier.
3        Q     Do you know why it took the Zurich
4   underwriters three months to provide you with a copy
5   of the local policy?
6        A     No. I don't.
7        Q     And you advised Mr. Sullivan on September
8   25th, 2003 that you will be reviewing the issues at
9   hand and you will formulate at least a preliminary
10  opinion next week; correct?
11       A     Yes.
12       Q     Did you provide Mr. Sullivan with your
13  preliminary opinion the following week?
14       A     I provided him with my opinion. It was in
15  e-mail format. What the date on it is, I can take a
16  look at it.
17                  (McCoy Deposition
18                   Exhibit No. 18 was marked
19                   for identification.)
20       Q     Mr. McCoy, the court reporter has handed
21  you Exhibit 18, an exhibit to your deposition.
22  Exhibit 18 consists of two pages bearing Bates Numbers
23  CR00044 through 45. It appears to bea an e-mail from
24  Kevin McCoy to Roger Watkins dated October 2nd, 2003.

1    sure that what underwriting had given to you
2    accurately contained all of the terms and conditions
3    that Zurich and Diageo had agreed to for the renewal
4    of the local policy to be effective July 1, 2000?
5        A    Yes.  I did.  The result of that follow-up
6    was the renewal certificate declaration that was
7    attached to the '99 to 2000 policy language.
8        Q    Did you receive Endorsement 5 at the same
9    time?
10       A    Yes.
11       Q    And is there any reason why you don't
12   mention Endorsement 5 in your October 2nd, 2003
13   coverage analysos which we have marked as Exhibit 18?
14       A    Because I didn't have that information at
15   the time that the analysis of October the 2nd was
16   done.
17       Q    My analysis on the October the 2nd e-mail
18   was based upon the terms and conditions of the 1999
19   through 2000 policy year.  Not until after the
20   analysis was completed did I receive a copy of the
21   renewal certificate declarations which were dated,
22   which were for the policy term of July 1, 2000 to July
23   1, 2001.  In other words, I received the policy
24   separately from the renewal declarations that were

1  correct?
2  A   Correct.
3  Q   My question, sir, is: Before you did your
4  coverage analysis and put it in writing on October
5  2nd, 2003, did you do anything to make sure that what
6  the Zurich underwriters had given to you was, in fact,
7  the correct local policy that had been issued for the
8  renewal on July 1, 2000?
9  A   To my understanding, what was given to me
10 which was a 1999 to 2000 policy period was the policy
11 that applied to the claim.
12 Q   When you were given that policy on
13 September 24th, 2003, did Zurich U.S. underwriting
14 represent to you that it was complete as per Zurich
15 U.S.'s underwriting files?
16 A   No.  They did not represent to me that it
17 was complete because obviously it was not complete
18 because if it were completed, then the renewal
19 certificate declarations for the period of July 1,
20 2000 to July 1, 2001 would have been given to me at
21 the same time as well.
22 Q   That wasn't my question.
23 A   Well, you asked me if it was a complete
24 copy.

1    resulting from any one incident.  The liability of
2    this company in respect of the loss of the cost of
3    withdrawal is limited to $50,139,000 any one loss or
4    series of losses resulting from any one incident.
5    There is no special deductible, and the policy
6    deductible of U.S. $100,000 would apply.  Anyway, this
7    endorsement does not apply to the loss at hand.
8              Isn't it correct, Mr. McCoy, that as of
9    October 21, 2003 it was your conclusion that the
10   pollution and contamination endorsement did not apply
11   to the Pillsbury claim?
12        A    Yes, which was an incorrect assessment.
13        Q    That wasn't my question, sir, is it what
14   you think today.  My question was --
15        A    At the time, yes.
16        Q    I want to ask it again.
17        A    Sure.
18        Q    As of October 21, 2003, was it your
19   conclusion that Endorsement 5 for pollution and
20   contamination, that that endorsement did not apply to
21   the Pillsbury claim?
22        A    Yes.  As of October the 21st of 2003, that
23   was my opinion.
24        Q    Why did you believe at that time that

1   Endorsement 5 did not apply to the Pillsbury claim?

2       A    Because I wasn't looking at the loss as a
3   contamination loss.

4       Q    Why not?

5       A    It just hadn't dawned on me that it was a
6   contamination loss.

7       Q    As of October 21st, 2003, what did you
8   view to be the peril that was involved with the loss.

9       A    It was an all-risk policy, and I didn't
10  see any other exclusions which would bar coverage.

11      Q    In your October 21, 2003 e-mail, you were
12  advising Roger Watkins and Cathy Lundgren that the
13  policy deductible of $100,000 would apply; correct?

14      A    As of October the 21st, yes.

15      Q    And that the local policy that you looked
16  at did have Endorsement Number 5 but there was no
17  special deductible for pollution contamination losses;
18  correct?

19      A    That's correct.

20      Q    And then at the top of Exhibit Number 20,
21  Cathy Lundgren wrote to you by e-mail, "I have looked
22  at the 2000 file and find an e-mail dated August 18
23  which states 'all other details, covers, deductible
24  remain unchanged' other than values. There is a PD/BI

1    Roger here, correct, in the second paragraph?

2         A    Yes.

3         Q    On November 4, 2003 you wrote,

4    "Roger, my analysis of the policy coverage was

5    presented to you on October 2, 2003, and our claims

6    legal department agreed with my analysis after their

7    review on the 7th. The local policy issued in the

8    States does not contain the limitations cited in your

9    correspondence of October 9, 2003. Cathy Lundgren in

10   hers of October 23, 2003 confirmed after review of her

11   2000 underwriting file found an e-mail from U.K.

12   underwriters dated August 18. All other details,

13   covers, deductibles remain unchanged."

14              Is it correct, sir, that as of November

15   4, 2003 that it was still your opinion that the

16   pollution and contamination endorsement did not apply

17   and that the $100,000 deductible in the local policy

18   applied to this claim?

19        A    Yes, as of that date, yes.

20        Q    Is it correct, sir, that Zurich's claims

21   legal department agreed with your analysis as of

22   November 4, 2003?

23        MR. HOEY:  Objection. I'm instructing him not

24   to answer. That's attorney-client privilege.

1   marked here as Exhibit Number 25 prior to suit being
2   filed by Pillsbury on December 31, 2003?
3           A    No.  I don't recall.
4           Q    Is it correct, sir, that as of December 4,
5   2003 it was still your opinion that the pollution and
6   contamination endorsement, Endorsement 5, did not
7   apply to this loss and that the hundred thousand
8   dollar deductible of the local U.S. policy was the
9   amount of the applicable deductible?
10          A    Yes.
11          Q    I'm sorry?
12          A    Yes.
13                   (McCoy Deposition
14                    Exhibit No. 26 was marked
15                    for identification.)
16          Q    Mr. McCoy, the court reporter has handed
17   you what she has marked as Exhibit Number 26 to your
18   deposition.
19               For the record, Exhibit Number 26 is a
20   one-page document bearing Bates Numbers CR00031.  Do
21   you recall receiving an e-mail from Mr. Sullivan on
22   December 29, 2003 which is the e-mail that is at the
23   top of Exhibit Number 26?
24          A    Yes.  I recall receiving the e-mail from

1    Mr. Sullivan.  I do not know when I actually received
2    it from him.  I believe I may have been on vacation
3    during the time in which he actually sent the e-mail.
4        Q    Do you recall receiving any communication
5    from Mr. Watkins between your December 4, 2003 e-mail
6    to him and Mr. Sullivan's December 29, 2003 e-mail to
7    you copying Mr. Watkins?
8        A    I don't recall that.
9        Q    Mr. McCoy, was it still your view as of
10   December 29, 2003 that Endorsement 5, the pollution
11   and contamination endorsement did not apply to the
12   Pillsbury loss?
13       A    Yes.  Based upon the documents that you
14   have presented in this deposition, yes.
15       Q    Was it also your view as of December 29,
16   2003 that the amount of the deductible applicable to
17   the Pillsbury claim was the $100,000 deductible in the
18   local U.S. policy?
19       A    Yes, based on what you presented to me
20   today, yes.
21                 (McCoy Deposition
22                  Exhibit No. 27 was marked
23                  for identification.)
24       Q    Mr. McCoy, the court reporter has handed

1    Q    Have you seen paragraph 31 in any other
2    policy Zurich has issued?
3    A    Yes. I have.
4    Q    Have you seen it more than once?
5    A    Yes.
6    Q    Is this type of provision, a consequential
7    loss provision an unusual provision in a property
8    insurance policy?
9    A    No. I wouldn't say it's unusual.
10   Q    I'm sorry?
11   A    I would not say it's unusual.
12   Q    Am I correct, sir, that under this
13   provision of the Zurich policy an insured is entitled
14   to recover for property that is not physically damaged
15   but loses its value because of physical damage to
16   other insured property because of a peril insured
17   against?
18   A    Yes. That would be the intent.
19   Q    Give me a moment. I'm going to go through
20   my notes. I may be close to wrapping up.
21
22              (Whereupon a brief recess was had,
23              after which the deposition of
24              Mr. McCoy continued as follows:)

1   costs which withdrawal costs have a separate
2   deductible that applies to that particular line of
3   coverage.
4       Q   Do you view the Pillsbury loss to have
5   arisen out of a single occurrence?
6       A   Yes.
7       Q   If you would, look at page 4 of Exhibit 2,
8   please.
9       A   Page 4 of the policy.  Okay.
10      Q   There is the heading deductible, paragraph
11  4 at the top; correct?
12      A   Yes.
13      Q   If you look at paragraph 4B, I'll read it
14  into the record, If two or more deductible amounts in
15  this policy apply to a single occurrence, the total
16  fee deducted shall not exceed the largest deductible
17  applicable.  Is it your view that paragraph 4B does
18  not apply to this claim?
19      A   Yes.
20      Q   Why does it not apply?
21      A   Because the endorsements that are attached
22  to a more specific line of coverage with respect to
23  the deductible that applies to seepage, contamination,
24  losses and to withdrawal losses, this deductible

1   language is superseded by the deductible language
2   contained in the enforsement to the policy.
3        A    Is their language in Exhibit 2 to that
4   effect that paragraph 4B does not apply where there
5   are endorsements?
6        A    No.  There is not.
7        Q    Isn't it true that the endorsements
8   according to Zurich are part of the policy that was
9   issued to Diageo?
10       A    Yes.  The endorsements are part of the
11  policy.
12       Q    Did the endorsements write out from the
13  policy, paragraph 4B under the heading deductible on
14  page 4 of Exhibit Number 2?
15       A    It's my belief that the deductibles, that
16  the language stated in 4B in the body of the policy is
17  not applicable to the endorsements that are attached
18  to that policy with respect to the contamination loss
19  and with respect to the withdrawals.
20       Q    So do you agree that when endorsements are
21  on a policy, they are part of the body of the policy;
22  correct?
23       A    Yes.
24       Q    And you've also testified that in your