UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-6560(DSD/JJG)

The Pillsbury Company, a
Company,

       Plaintiff,

v.                                                 **ORDER**

Zurich American Insurance
Company, a corporation,

       Defendant.

> Lawrence Zelle, Esq., Mark J. Feinberg, Esq., Patricia J. St. Peter, Esq., Chad A. Snyder, Esq. and Zelle, Hofmann, Voelbel, Mason & Gette, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415, counsel for plaintiff.
>
> James M. Hoey, Esq. and Clausen Miller, PC, 10 South LaSalle Street, Chicago, IL 60603 and Joseph F. Lulic, Esq., Timothy S. Poeschl, Esq. and Hanson, Lulic & Krall, 700 Northstar East, 608 Second Avenue South, Minneapolis, NN 55402, counsel for defendant.

This matter is before the court upon the parties' cross motions for partial summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion in part and denies defendant's motion.

**BACKGROUND**

This is a breach of contract and declaratory judgment action for coverage under an insurance policy. Plaintiff The Pillsbury

Company ("Pillsbury") owns and operates a plant in Ohio where a "pre-mix" is produced for use in its biscuit products. During the relevant period, defendant Zurich American Insurance Company ("Zurich") provided property insurance to Pillsbury. In May of 2002, Pillsbury submitted a claim to Zurich for product losses associated with manufacture of the pre-mix. On April 8, 2004, Zurich rejected the majority of Pillsbury's claim based on the application of deductibles under the policy. Pillsbury claims that it is entitled to full coverage under the policy.

The events that gave rise to Pillsbury's loss occurred in June of 2001. On or about June 8, a Pillsbury employee at the Ohio plant discovered a hole in one of the plastic sifting screens on production line number six, which was used solely to manufacture pre-mix for other products. The screen was replaced. Maintenance staff tested random bags of pre-mix and found no pieces of screen, so production continued. However, less than two weeks later, Pillsbury discovered pieces of plastic screen in biscuits on the production line at its Missouri plant. On June 23, 2001, Pillsbury again tested bags of pre-mix produced during the relevant time on line six at the Ohio plant. Pieces of plastic screen were discovered. As a result, Pillsbury collected and destroyed all pre-mix that could contain screen fragments. Pillsbury also recalled, collected and destroyed finished product that contained such pre-mix.

Pillsbury's property insurance policy in effect at the time of its loss was the 2000-2001 renewal policy issued by Zurich. The policy "insures against all risk of physical loss of or damage to property." (Def.'s Mem. Supp. Mot. Summ. J. Ex. B at 28.) However, coverage is excluded for "seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever" ("contamination exclusion"). (Id. Ex. B at 31.) The policy does not define the term "contamination."

Zurich alleges that Pillsbury's 2000-2001 policy includes renewal certificate declarations and endorsements that were issued when the policy was renewed in 2000. One of the documents, Endorsement 5, modifies the contamination exclusion to extend coverage to "contamination, direct or indirect, arising from ... sudden unexpected accidental loss destruction or damage," among other things. (Id. Ex. B at 7.) For covered losses, the endorsement imposes a deductible in the amount of $151,390 for the cost of withdrawing contaminated products. Although coverage for contamination-related losses is expanded by the exceptions to exclusion in Endorsement 5, the Renewal Certificate Declaration imposes a deductible of $7,569,500 on covered contamination losses arising out of any single occurrence. (See id. Ex. B at 3.)

On May 17, 2002, Pillsbury submitted a Preliminary Claim Report to Zurich for total claimed damages in the amount of $12,298,191. After requests for additional information, Zurich

3

finally responded to Pillsbury's claim on April 8, 2004.  Zurich assessed Pillsbury's loss as $8,399,185 and determined that the loss fell under the contamination exclusion.  However, Zurich decided that the loss was covered under Endorsement 5 as a loss arising from sudden unexpected accidental destruction or damage. (See id. Ex. F.)   Therefore, Zurich applied the $7,569,500 contamination loss deductible.  It also imposed the $151,390 withdrawal deductible because Pillsbury had to recall products. Zurich paid Pillsbury $678,295.  On October 20, 2004, Zurich made an additional payment to Pillsbury in the amount of $69,666.

On December 30, 2003, Pillsbury filed this action, seeking a declaratory judgment that the Zurich insurance policy provides full coverage and alleging breach of contract for Zurich's failure to indemnify Pillsbury for losses incurred in the amount of $12,298,191.  Zurich brought a counterclaim for reformation of the policy to include the renewal declarations and endorsements. Both parties now move for partial summary judgment as to the interpretation of the insurance policy.

## DISCUSSION

I. **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. The interpretation of an insurance policy is a question of law that the court may properly decide on summary judgment. See Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh, 658 N.W.2d 522, 527 (Minn. 2003).

## II.  Insurance Policy Coverage

The principal dispute between the parties is whether Pillsbury's loss was a "contamination" loss and therefore excluded

5

under the policy.[1] Terms not defined in an insurance policy are given their ordinary meaning. <u>Lhotka v. Ill. Farmers Ins. Co.</u>, 572 N.W.2d 772, 774 (Minn. Ct. App. 1998). However, any ambiguity in policy terms is construed against the insurer and in favor of the insured. <u>Minn. Prop. Ins. v. Slater</u>, 673 N.W.2d 194, 199 (Minn. Ct. App. 2004). "An ambiguity exists when a word or phrase in an insurance policy is reasonably subject to more than one interpretation." <u>Id.</u> at 199. Furthermore, ambiguous policy exclusions "should be construed strictly against the insurer and in favor of the insured." <u>Safeco Ins. Co. v. Lindberg</u>, 380 N.W.2d 219, 222 (Minn. Ct. App. 1986); <u>see also</u> <u>Wanzek Constr., Inc. v. Employers Ins. of Wausau</u>, 679 N.W.2d 322, 329 (Minn. 2004) (ambiguous exclusions are construed liberally in favor of coverage).

Both the original policy and Endorsement 5 exclude coverage for "loss, damage, costs or expenses in connection with any kind or description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever."  (Def.'s

---

[1] The parties also dispute whether Pillsbury's 2000-2001 policy included Endorsement 5 and the Renewal Certificate Declarations. However, both the renewal documents and the original policy contain contamination exclusions. The only difference between them is that the renewal documents contain more exceptions to the exclusion and set forth additional deductibles for those exceptions. (<u>Compare</u> Def.'s Mem. Supp. Mot. Summ. J. Ex B at 28, <u>with</u> <u>id.</u> at 3, 7.) Therefore, whether Pillsbury suffered a loss in connection with "contamination" remains the dispositive issue.

Mem. Supp. Summ. J. Ex. B at 7, 31.)  Pillsbury maintains that the plastic screen pieces in the pre-mix do not qualify as "contamination" because (1) they did not result from any discharge or release, (2) they are not irritants, but rather merely presented a choking hazard and (3) the term "contamination" does not relate to any foreign object, but rather only to environmental hazards. Zurich argues, however, that Pillsbury's loss is excluded because Minnesota case law and the ordinary meaning of "contamination" compel the conclusion that almost any foreign substance qualifies as a contaminant.  Zurich urges the court to adopt a definition of "contamination" that includes foreign, undesirable objects.  (See id. at 12.)

Whether the ordinary meaning of "contamination" includes the presence of any undesirable foreign object in a product is at best ambiguous.  The definition of "contamination" refers to "something that contaminates" or "impurity."  Webster's Third New International Dictionary 491 (1993). "Contaminate" means "to soil, stain, corrupt, or infect by contact or association" or "make inferior or impure by mixture: pollute."  Id. at 491.  Contrary to Zurich's position, the definition of "contaminate" does not suggest that almost any substance or foreign object qualifies as a contaminant.  Rather, the terms "soil, stain, corrupt, or infect" and "impure by mixture" suggest that a contaminant must blend with or permeate its substrate in such a way that purification may

7

present difficulties. In other words, the definition of "contaminate" implies that impurities are particulate or chemical in nature.

The presence of plastic screen pieces in pre-mix does not reasonably constitute "contamination." In particular, pieces of screen do not "soil, stain, corrupt or infect" the pre-mix because they do not blend with or permeate the pre-mix in such a way that removal is technically or chemically difficult. Rather, in Pillsbury's case, the pieces of screen could be isolated and picked or sifted out.[2] Further, the screen pieces did not constitute a particulate, chemical or similar impurity by mixture, but rather presented a choking hazard due to physical obstruction.[3] For all of these reasons, the court finds that the ordinary meaning of "contamination" is reasonably subject to an interpretation that does not include the presence of foreign objects such as pieces of

---

[2] Pillsbury did not remove the pieces in part because it was economically infeasible. Pillsbury also alleges that re-sifting to remove the pieces would destroy the pre-mix. (See Snyder Aff. Ex. 3 at 2.) That allegation does not change the analysis because removal is still not necessarily difficult due to any blending or permeation of the screen pieces.

[3] Zurich argues that the pieces of screen rendered the pre-mix "impure by mixture" because the screen pieces were undesirable and did not belong in the pre-mix. However, the term "impure" implies that the product or substrate is made unclean or inferior. See Webster's Third New International Dictionary 1138 (1993). The presence of the screen pieces did not result in an inferior type of pre-mix or render the pre-mix unclean. Even if their presence could be described as an impurity by mixture, Zurich's argument ignores the full definition of "contamination."

8

plastic screen in Pillsbury's pre-mix. Therefore, even if the term "contamination" also reasonably supports the interpretation offered by Zurich, the language is at best ambiguous and must be construed in favor of coverage.

Zurich argues that Minnesota case law compels the conclusion that "contamination" unambiguously describes the type of loss suffered by Pillsbury. However, all of the cases cited by Zurich in support of its argument are distinguishable because they involved chemicals or toxins, not foreign objects. See Am. States Ins. Co. v. Technical Surfacing, Inc., 50 F. Supp. 2d 888, 889 (D. Minn. 1999) (Xylene fumes and chemical residue); Bd. of Regents of the Univ. of Minn. v. Royal Ins. Co. of Am., 517 N.W.2d 888, 889 (Minn. 1994) (asbestos fibers in air); Gen. Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 150 (Minn. Ct. App. 2001) (pesticide); Auto-Owners Ins. Co. v. Hanson, 588 N.W.2d 777, 778 (Minn. Ct. App. 1999) (lead in paint).

To the extent that the cases support a broad interpretation of the term "contamination," they do so only with respect to the type of environment being contaminated. See Royal, 517 N.W.2d at 893-94 (policy exclusion applies to contamination of both natural and artificial environments); Auto-Owners, 588 N.W.2d at 780 (scope of exclusion is broad if policy language does not limit type of objects polluted). As to type of contaminant, Minnesota case law suggests that foreign objects would not qualify as contaminants

because contamination involves "substances" that mix, cause impurity, saturate and flow "to adjacent environments." Minn. Mining & Mfg. Co. v. Walbrook Ins. Co., No. C1-95-1775, 1996 WL 5787, at *2 (Minn. Ct. App. Jan. 9, 1996); see Am. States, 50 F. Supp. 2d at 890. Moreover, the court in Auto-Owners recognized that "there must be a limit to the construction of what constitutes an irritant or contaminant" and did not accept the argument that "virtually any substance" can qualify. 588 N.W.2d at 781. For all of these reasons, the court rejects Zurich's argument that Minnesota case law supports its broad interpretation of "contamination."

Finally, the court should avoid over-broad results when interpreting the term "contamination." See id. at 781 (avoiding interpretation that would render policy illusory); Minn. Mining, 1996 WL 5787, at *2 (refusing to define "pollutant" to apply to introduction of any foreign substance, in absence of such policy language). Zurich's interpretation of contaminant to include any undesirable, foreign object could include such benign errors as incorrect merchandising or promotion materials included with the product. The court declines to apply such a broad definition of "contamination."

For all of the above reasons, summary judgment in favor of Pillsbury on the applicability of the contamination exclusion is warranted. Because the court finds that Pillsbury's loss is not

10

excluded by the contamination loss provision, the court will not address Pillsbury's alternative theories of coverage.

**CONCLUSION**

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1.  Defendant's motion for partial summary judgment [Docket No. 65] is denied.

2.  Plaintiff's motion for partial summary judgment [Docket No. 67] is granted in part.

Dated:  October 25, 2005

                                             s/David S. Doty
                                             David S. Doty, Judge
                                             United States District Court